No. 111,005

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUILLERMO G. RUIZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

A plea of guilty or no contest may be withdrawn at any time before sentence is adjudged for good cause shown and within the discretion of the court. An appellate court will not disturb a district court's decision to deny a defendant's presentence motion to withdraw plea unless the defendant shows an abuse of discretion.

2.

In determining whether a defendant has shown good cause to withdraw a plea, a district court should consider three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. However, these factors should not be applied mechanically and to the exclusion of other factors.

3.

In Kansas, the offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

1

4.

As a general rule, a litigant may not invite error and then complain of the error on appeal.

5.

When a defendant stipulates at sentencing to the factual basis supporting his or her criminal history classification, the defendant may be barred from challenging the factual stipulations on appeal under the invited error doctrine. However, a defendant who stipulates to the legal effect of his or her criminal history classification is not barred from challenging the criminal history classification on appeal.

6.

Kansas law is clear that a defendant cannot agree to an illegal sentence.

7.

The Kansas Supreme Court has held that when calculating a defendant's criminal history that includes out-of-state convictions committed prior to the 1993 enactment of the Kansas Sentencing Guidelines Act, the out-of-state convictions must be classified as nonperson offenses.

8.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication the Supreme Court is departing from its previous position.

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA and WARREN M. WILBERT, judges. Opinion filed February 20, 2015. Affirmed in part, vacated in part, and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., MCANANY and SCHROEDER, JJ.

MALONE, C.J.:  Guillermo Ruiz pled no contest to attempted aggravated sexual battery. He now appeals his conviction and sentence contending the district court erred (1) by denying his presentence motion to withdraw his plea; (2) by classifying his 1991 California convictions involving child sex offenses as person offenses for criminal history purposes; and (3) by sentencing him based on his criminal history without requiring the State to prove the criminal history to a jury beyond a reasonable doubt.

We conclude the district court did not abuse its discretion by denying Ruiz' presentence motion to withdraw his plea. We also conclude, under the facts herein, that Ruiz did not invite any error in the calculation of his criminal history score when his counsel stipulated to the criminal history at the sentencing hearing. Applying our Supreme Court's holding in *State v. Murdock*, 299 Kan. 312, Syl. ¶ 5, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014, we conclude that Ruiz' 1991 California convictions involving child sex offenses must be classified as nonperson offenses for criminal history purposes. Thus, we vacate Ruiz' sentence and remand for resentencing using the correct criminal history score.

FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2002, the State charged Ruiz with one count of kidnapping, one count of attempted rape, and one count of indecent solicitation of a child. The underlying factual allegations that led to the charges are not pertinent to this appeal. From the record on appeal, it appears that Ruiz absconded in September 2002, after a preliminary hearing but prior to trial, and was not arrested again until June or July 2011. Ruiz was represented by several different attorneys throughout the proceedings in district court.

3

On January 24, 2013, the district court held a plea hearing. Ruiz was present at the hearing and was represented by counsel, Carl Maughan. The parties had reached a plea agreement whereby Ruiz would plead no contest to attempted aggravated sexual battery, and the remaining charges would be dismissed. Throughout the hearing, Ruiz repeatedly assured the district court that he understood the rights he was giving up by pleading no contest and that he understood the plea agreement.

When the judge asked Ruiz whether he was satisfied with Maughan's services, Ruiz said yes, but when the judge asked if Ruiz had any complaints about his representation so far, Ruiz registered a complaint about his prior attorneys. In a rambling statement, Ruiz claimed that after he was incarcerated, he discovered proof of his innocence but an investigator hired by a prior attorney did not follow up on the evidence. When the judge again asked whether Ruiz was satisfied with Maughan, Ruiz replied, "Yes. Yes, sir."

The judge asked Ruiz whether it was his decision to enter the plea and whether he did so freely and voluntarily. Ruiz replied, "Yes, sir." Maughan then stated that he had spoken with Ruiz the previous day and immediately prior to the hearing to ensure that Ruiz wanted to enter the plea; Maughan stated he told Ruiz that if he did not wish to enter a plea, they would proceed to trial. Pursuant to the plea agreement, Ruiz then pled no contest to attempted aggravated sexual battery. After hearing the State's factual basis for the charge, the district court found Ruiz guilty and dismissed the remaining charges.

The district court ordered a presentence investigation (PSI) report which revealed, among other prior convictions, two 1991 California convictions of felony child molestation and a separate 1991 California conviction of using a minor for sex acts. Ruiz filed a written objection to his criminal history, specifically objecting to the classification of the California crimes as person offenses, claiming that under *State v. Williams*, 291 Kan. 554, Syl. ¶ 4, 244 P.3d 667 (2010), they should be classified as nonperson offenses.

4

On May 28, 2013, Ruiz, represented by new counsel, filed a motion to withdraw plea. In the motion, he argued that he had consistently maintained his innocence and that he had not wanted to enter a plea that could result in his conviction. Ruiz asserted that he "was guaranteed by his defense counsel his right to address the Court, which [Ruiz] assumed could result in the Court actually finding him not guilty and refusing to accept the plea." Ruiz also argued that Maughan had provided ineffective assistance of counsel by failing to adequately prepare for trial, investigate facts, or prepare a defense.

In July 2013, the district court held an evidentiary hearing on Ruiz' motion to withdraw the plea. Ruiz first called Scott Davis, the chaplain at the Sedgwick County Detention Facility. Davis testified that Ruiz had told him that other people had heard a third party confess to the crimes with which Ruiz was charged.

Next, Ruiz called Christopher Eaves, a criminal defense investigator who had worked on Ruiz' case. Eaves testified that Ruiz had told him that a man named Ted Padgett knew Ruiz was being blackmailed by the alleged victims of the crime. Ruiz also told Eaves that two other inmates—Michael Martinez and Carlos Montidoro—had overheard Padgett telling Ruiz he knew about the blackmail. Eaves testified that he had located Padgett's address and he was in the process of locating Montidoro when defense counsel Brad Sylvester—who had represented Ruiz prior to Maughan—told Eaves to put his investigation on hold. Sylvester told Eaves that the case was going to another attorney, so he submitted his file to Sylvester and did no further work on the case.

Ruiz then testified on his own behalf. He stated that he had believed he would be able to speak at the plea hearing and inform the judge that he was innocent. Ruiz admitted that he understood the English language, but he stated that on one occasion when he asked Maughan for an interpreter, the interpreter did not stay through the entire meeting. Although Ruiz conceded that he told the court that he understood the charges

5

against him and his rights, he claimed he was merely attempting to reach the part of the hearing when he believed he would be able to tell the judge that he was innocent.

Regarding Maughan's alleged failure to prepare and investigate, Ruiz testified that he gave Maughan the names of Montidoro, Martinez, and other witnesses to contact, but Maughan had failed to follow up. Ruiz stated that he always maintained his innocence and never told Maughan he wanted a plea deal; rather, Ruiz testified he was forced to sign a plea agreement because it was the only way he could get in front of a judge. Ruiz testified that he did not understand that he would be found guilty at the plea hearing; rather, he believed the judge would "stop the court and investigate [the] case." Ruiz said he had informed the court at his plea hearing that he was satisfied with Maughan's representation only because Maughan had told him how to answer.

The State called Maughan, who testified that there was never an interpreter present for his one-on-one meetings with Ruiz and that Maughan never had any impression that Ruiz did not understand him. Maughan acknowledged that an interpreter was present at one meeting between himself, another attorney in his office, and Ruiz; the interpreter had to leave halfway through the meeting, but they finished the conversation without an interpreter. Maughan stated that he and Ruiz discussed whether he actually needed an interpreter and that Ruiz never brought it up again.

Maughan further testified that he had several conversations with Ruiz about the plea negotiations in which he explained the offer to Ruiz and Ruiz instructed him to try again for a more favorable deal. Maughan also discussed with Ruiz the effects of accepting a plea offer, including potential sentences and Ruiz' right to a jury trial. According to Maughan, Ruiz had witnesses he wanted to call at trial, but Maughan understood that none of them could be located. He spoke on several occasions with Ruiz about the danger of proceeding to trial if they were not sure of the witnesses. He

6

explained to Ruiz the benefits of what Maughan perceived as a "fairly generous plea offer," but told Ruiz they would go to trial if he wanted to do so.

Regarding his investigation of Ruiz' named witnesses, Maughan testified that before the plea hearing he was simply trying to determine whether the case would be disposed of by plea or trial; he intended to follow up with the witnesses if the case went to trial. Maughan believed that Eaves had not been able to talk with Padgett and was unable to locate the other witnesses. Maughan testified that he went over the plea agreement and the acknowledgment of rights form with Ruiz, explaining each paragraph, and left the forms with Ruiz overnight so he could examine them further.

Maughan denied telling Ruiz how to respond at the plea hearing, other than correcting Ruiz when he pled guilty rather than no contest. Maughan believed that Ruiz understood what was happening at the plea hearing and that he entered his plea voluntarily to take advantage of the plea agreement. Maughan testified that Ruiz did not express any confusion after the plea hearing or in subsequent meetings. Ultimately, Maughan testified that it was Ruiz' decision to accept the plea offer and plead no contest.

After hearing the evidence, the district court entered an extensive ruling from the bench. The district court found that Ruiz had offered no credible evidence that Maughan's representation was deficient. The district court also found that no language issues existed to hinder communication. The district court found that Ruiz knowingly and voluntarily pled no contest. Finally, the district court found that there were no issues with the way the plea hearing was conducted that would give rise to good cause to withdraw the plea. Accordingly, the district court denied Ruiz' motion to withdraw his plea.

The case proceeded to sentencing on October 22, 2013. At the beginning of the hearing, there was an extensive discussion between counsel and the judge about Ruiz' criminal history, specifically concerning how the three California convictions should be

scored. Ruiz' counsel acknowledged that he had received certified copies of the California convictions. Ruiz' counsel stated, "I agree they are valid convictions. The issue I believe before the Court is how those convictions are used." Ruiz' counsel then stated, "I don't have any objection to the two person felonies from California being used against him, but I have an argument as to how they are used to enhance a sentence from that of a criminal history B to a persistent sex offender." Ruiz did not personally admit his criminal history in open court, nor was he ever requested to do so by the judge.

Ultimately, the district court used one of the California convictions of felony child molestation in order to sentence Ruiz as a persistent sex offender. The district court scored the other two California convictions as person felonies to place Ruiz into criminal history category B. The district court sentenced Ruiz to 62 months' imprisonment with 12 months' postrelease supervision. Ruiz timely appealed the district court's judgment.

MOTION TO WITHDRAW PLEA

Ruiz first contends that the district court erred by denying his presentence motion to withdraw his plea. He argues that he showed good cause to withdraw his plea by demonstrating that (1) his trial counsel was ineffective and (2) he did not knowingly and voluntarily enter his plea. The State argues that Ruiz did not show the requisite good cause for withdrawing a plea and the district court did not err in denying the motion.

K.S.A. 2014 Supp. 22-3210(d)(1) provides that a plea of guilty or no contest, "for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." An appellate court will not disturb a district court's decision to deny a defendant's presentence motion to withdraw plea unless the district court abused its discretion in denying the motion. *State v. Macias-Medina*, 293 Kan. 833, 836, 268 P.3d 1201 (2012). A district court abuses its discretion by taking judicial action that is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an

8

error of fact. *State v. Laurel*, 299 Kan. 668, 676, 325 P.3d 1154 (2014). The party asserting that the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

> "In determining whether a defendant has shown good cause to withdraw a plea, a district court should consider three factors, sometimes called *Edgar* factors, after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. [Citation omitted.] These factors should not, however, be applied mechanically and to the exclusion of other factors. [Citation omitted.]" *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

Ruiz first contends that he was not represented by competent counsel at his plea hearing. Specifically, he alleges that Maughan failed to thoroughly investigate the case prior to Ruiz entering the plea in that Maughan did not contact witnesses identified by Ruiz. Ruiz argues that the failure to speak with the witnesses meant that Maughan did not have all the information necessary to fully appreciate the strength of Ruiz' case, which was crucial to competently advise Ruiz on whether he should enter into a plea agreement.

In arguing that he established good cause to withdraw his plea because he was not represented by competent counsel, Ruiz is not required to "demonstrate ineffective assistance arising to the level of a violation of the Sixth Amendment." See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). In fact, our Supreme Court has stated that "[m]erely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea." 290 Kan. at 513; see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). As stated above, Ruiz argues that Maughan's failure to interview defense witnesses rendered him incompetent to advise Ruiz about the benefits of entering a no-contest plea.

9

At the hearing on the motion to withdraw the plea, Maughan testified that he knew Ruiz had some witnesses he wished to be called at trial, but Maughan's understanding was that none of those witnesses could be located. Maughan believed that Eaves had not been able to talk with Padgett and was unable to locate the other witnesses. Moreover, Maughan testified that he spoke with Ruiz about the witnesses' testimony and Maughan believed that even if the witnesses testified at trial, there was a significant risk that Ruiz would be found guilty and would face a long prison sentence.

Maughan testified that prior to the plea hearing he was simply trying to determine whether Ruiz was going to accept the plea offer or if the case was going to trial. He reiterated, however, that he had promised Ruiz that if they went to trial Maughan would investigate and be as prepared as possible for trial. Maughan explicitly testified that he felt he had sufficient information, in part gleaned from the attorneys who had previously represented Ruiz and investigated the case, to "engage in discussions regarding plea negotiations and the merits or dangers of proceeding to trial."

In its ruling from the bench, the district court found that preparation of a case took many different forms and that "[i]t is fairly common that the majority of trial prep work doesn't occur until a decision has been made to reject a plea offer or the decision is essentially made to go to trial." The judge also noted that Ruiz "expressed satisfaction" at the plea hearing with Maughan's representation and service. The judge specifically found that "no credible evidence was presented of any ineffective assistance of counsel by Mr. Maughan in his representation of Mr. Ruiz in this hearing" and "[t]he evidence indicates Mr. Maughan acted as competent counsel."

Ruiz' argument that Maughan provided incompetent assistance by abandoning his investigation of Ruiz' witnesses is unpersuasive. It is important to note that Maughan was one of several attorneys appointed to represent Ruiz in district court. By the time Maughan was appointed to represent Ruiz, there had been some investigation into the

10

substance of the charges. Maughan determined that he would explore a plea offer but if negotiations failed he would pick up with the investigation. As Maughan testified, he negotiated a "fairly generous plea offer." Ruiz pled no contest to one count of attempted aggravated sexual battery in exchange for dismissal of one count of kidnapping, one count of attempted rape, and one count of indecent solicitation of a child.

Maughan's understanding that none of the witnesses could be located was not completely accurate because Eaves testified that he had located Padgett's address. Nevertheless, Maughan spoke with Ruiz about what the witnesses' testimony would be and, even with that knowledge, felt a plea was in Ruiz' best interest. The district court found that Ruiz presented no credible evidence that Maughan's representation was deficient. Considering all the evidence, Ruiz has failed to establish that the district court abused its discretion in making this finding.

Next, Ruiz argues that he did not knowingly and voluntarily enter his plea. Ruiz asserts that he believed he could argue his innocence at the plea hearing and that the district court could find him not guilty despite his entering a plea of no contest. He concedes that Maughan and the district court repeatedly attempted to explain the consequences of entering a plea, but he maintains that he "still did not understand that the district court would not be evaluating evidence and possibly finding him not guilty at his plea hearing." He notes that he requested an interpreter on one occasion, implying that a language barrier impeded his understanding of the consequences of entering a plea.

At the hearing on the motion to withdraw plea, the district court explicitly found that "no English language issues exist based upon the evidence presented at this hearing, and, in addition, from the Court's observations. I would note that a review of the plea hearing transcript indicates no issues or difficulties due to the English language, either speaking or understanding or reading." The district court found that Ruiz had been

11

advised of all his rights. Ultimately, the district court found that Ruiz had not shown that his "plea was anything other than freely, voluntarily, knowingly, and intelligently given."

The district court did not abuse its discretion by finding that the plea was knowingly and voluntarily entered. Regarding the language issue, although Ruiz testified that he had trouble understanding what was happening at the plea hearing, Maughan testified that he did not think Ruiz had trouble understanding English. Moreover, the plea hearing transcript reflects that when the hearing began, the judge asked Ruiz whether he could read and understand English, and Ruiz answered, "Yes."

Regarding Ruiz' asserted belief that entering a plea would still allow him to be found not guilty by the court, Maughan testified that he had explained to Ruiz that if Ruiz accepted the plea offer, he would not be able to contest the State's evidence. Moreover, at the plea hearing, Ruiz assured the district judge that he understood the rights he was giving up by pleading no contest. The following colloquy occurred at the plea hearing:

> "THE COURT: . . . Mr. Ruiz, do you understand by entering a plea of no contest today, you are essentially going to be admitting to the facts alleged in the Amended Complaint as set forth by the State when they provide the factual basis? Do you understand that?
> "THE DEFENDANT: Yes, sir.
> . . . .
> "THE COURT: And that by this plea of no contest, you understand that you are not saying you committed this crime, but you are stating that you are not going to be contesting the charges against you?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: Or the amended charge against you; understand that?
> "THE DEFENDANT: Yes, sir.
> "THE COURT: And you understand that if you plead no contest and the prosecutor is basically going to tell us or tell me what the evidence would be, and I will consider the State's allegations under this Amended Complaint as true, and without a

12

trial, and then I will go ahead and find you guilty of the charge—of the amended charge, and you will be found guilty just like you had pled guilty or if a jury had found you guilty. Do you understand that?

"THE DEFENDANT:  Yes, sir."

In sum, Ruiz failed to establish that his trial counsel was ineffective. He also failed to establish that he did not knowingly and voluntarily enter his plea. The party asserting that the district court abused its discretion bears of burden of showing such abuse of discretion. *Rojas-Marceleno*, 295 Kan. at 531. Considering the factors set forth in *Edgar*, 281 Kan. at 36, Ruiz has failed to show good cause to withdraw his plea. Thus, we conclude the district court did not abuse its discretion in denying the motion.

CRIMINAL HISTORY CALCULATION

Next, Ruiz argues that in light of our Supreme Court's decision in *Murdock*, the district court erred by classifying his 1991 California convictions involving child sex offenses as person offenses. In *Murdock*, our Supreme Court held that when calculating a defendant's criminal history that includes out-of-state convictions committed prior to the enactment of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, the out-of-state convictions must be classified as nonperson offenses. 299 Kan. 312, Syl. ¶ 5.

The State does not challenge *Murdock*'s holding. However, the State replies that Ruiz invited any error that may have occurred by stipulating to his criminal history at the sentencing hearing, so this court should not review the merits of Ruiz' claim.

Whether a prior conviction is properly classified as a person or nonperson offense involves the interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Murdock*, 299 Kan. at 314; accord *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

13

K.S.A. 21-4715(a), recodified in K.S.A. 2014 Supp. 21-6814(a), provides that the defendant's criminal history "shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge." Thus, the district court should provide the defendant an opportunity to personally stipulate to his or her criminal history in open court at the sentencing hearing. As a general rule, a litigant may not invite error and then complain of the error on appeal. See *State v. Jones*, 295 Kan. 804, 811-13, 286 P.3d 562 (2012). Whether to apply the doctrine of invited error presents a question of law. Generally, an appellate court exercises unlimited review over questions of law. *State v. Reed*, 50 Kan. App. 2d 1133, Syl. ¶ 1, 336 P.3d 912 (2014).

We will briefly review the facts pertinent to the State's argument that Ruiz invited any error concerning the calculation of his criminal history. Ruiz' PSI report revealed, among other prior convictions, two 1991 California convictions of felony child molestation and a separate 1991 California conviction of using a minor for sex acts. Prior to sentencing, Ruiz' counsel filed a written objection to his criminal history, specifically objecting to the classification of the California crimes as person offenses.

At the sentencing hearing, Ruiz was represented by new counsel. At the beginning of the hearing, there was an extensive discussion between counsel and the judge about Ruiz' criminal history, specifically concerning how the California convictions should be scored. Ruiz' counsel acknowledged that he had received certified copies of the California convictions. Ruiz' counsel stated: "I agree they are valid convictions. The issue I believe before the Court is how those convictions are used." Ruiz' counsel then stated: "I don't have any objection to the two person felonies from California being used against him, but I have an argument as to how they are used to enhance a sentence from that of a criminal history B to a persistent sex offender."

14

Ruiz did not personally admit his criminal history in open court, nor was he ever requested to do so by the judge. Ultimately, the district court used one California conviction of felony child molestation in order to sentence Ruiz as a persistent sex offender. The district court scored the other two California convictions as person offenses to place Ruiz into criminal history category B. The district court sentenced Ruiz to 62 months' imprisonment with 12 months' postrelease supervision.

The State contends that Ruiz invited any error concerning the calculation of his criminal history based on his counsel's explicit statement that "I don't have any objection to the two person felonies from California being used against him . . . ." According to the State, the only objection Ruiz made at sentencing was that the district court could not use any of the California convictions to sentence him as a persistent sex offender. The State argues that Ruiz stipulated that two of the California convictions could be scored as person felonies placing him into criminal history category B. Based on this stipulation, the State argues that Ruiz invited the error to which he now complains about on appeal.

Whether in the context of the doctrine of invited error or the doctrine of waiver, our court previously has addressed the issue of whether the defendant's stipulation to criminal history at sentencing bars the defendant from challenging a criminal history error on appeal. However, our court's decisions on this issue have not been consistent. We will review many of our court's published and unpublished decisions addressing the issue of whether a defendant's stipulation to criminal history classification at sentencing bars the defendant from challenging the criminal history on appeal.

*Court of Appeals decisions addressing stipulations to criminal history*

In *State v. McBride*, 23 Kan. App. 2d 302, 930 P.2d 618 (1996), the defendant stipulated to the criminal history worksheet at sentencing. He later filed a motion to correct clerical and arithmetic errors, claiming a prior juvenile conviction was a

nonresidential burglary. The district court denied the motion. On appeal, this court rejected the defendant's claim that his motion to correct clerical and arithmetic errors effectively was a motion to correct an illegal sentence, which can be raised at any time. 23 Kan. App. 2d at 304; see K.S.A. 22-3504(1). This court further opined that the defendant invited the error by stipulating to the criminal history score. Specifically, this court stated:  "[The defendant] stipulated to his criminal history during sentencing; he cannot now complain that it was incorrect. Such argument has been waived." 23 Kan. App. 2d at 304.

Ten years later, however, *State v. Donaldson*, 35 Kan. App. 2d 540, 541, 545-46, 133 P.3d 154 (2006), addressed an appeal from the denial of a motion to correct illegal sentence in which the defendant argued that the district court had erred in classifying prior Oklahoma convictions as person misdemeanors. The State argued the defendant could not raise the challenge because he had stipulated to his criminal history at sentencing. The *Donaldson* court drew a distinction between a stipulation to the factual basis for the defendant's criminal history classification and a stipulation to its legal effect. 35 Kan. App. 2d at 543-44. In rejecting the State's argument that the defendant had invited any error, the *Donaldson* court stated:

> "Nevertheless, the invited error rationale is not applicable when the erroneous information at the heart of a stipulation is within the knowledge of the court, the prosecutor, and defense counsel, but not the defendant. As the defendant notes in this appeal, the stipulation at issue is not to the factual existence of his prior convictions but to the classification of those prior convictions.
>
> "Essentially, the error raised by the defendant in his motion to correct an illegal sentence and in this appeal involves the application of law. As such, no party can properly stipulate to an incorrect application of the law. [Citation omitted.] Therefore, the defendant's failure to object to his criminal history score, as required by K.S.A. 2005 Supp. 21-4715(c), merely prevents him from challenging the factual basis for the criminal history classification applied in this case." 35 Kan. App. 2d at 543-44.

16

Since *Donaldson* was decided, this court has often acknowledged the distinction between a stipulation to the factual basis for the defendant's criminal history classification and a stipulation to its legal effect. See, *e.g.*, *State v. Omar-Cruz*, No. 110,698, 2014 WL 6909677, at *4 (Kan. App. 2014) (unpublished opinion) ("Omar-Cruz is not disputing the existence of his prior convictions, but rather their legal effect. As such, this falls into an exception of the invited error doctrine as no party can stipulate to an incorrect application of the law. [Citation omitted.]"); *State v. Lopez*, No. 110,286, 2014 WL 3843293, at *2-3 (Kan. App. 2014) (unpublished opinion) (finding invited error, even though defendant did not object to criminal history score below, did not bar challenge to "incorrect application of the law" in calculating criminal history when appellant did not attempt "to challenge the factual basis"), *petition for rev. filed* September 2, 2014; *State v. Barnett*, No. 109,597, 2014 WL 113468, at *3-5 (Kan. App. 2014) (unpublished opinion) (finding invited error did not bar defendant from challenging the district court's classification of a prior juvenile adjudication as a felony); *State v. Luarks*, No. 106,643, 2012 WL 6634395, at *5-9 (Kan. App. 2012) (unpublished opinion) (citing *Donaldson* and allowing challenge to classification as person crimes of pre-Guidelines crimes), *rev. granted* October 31, 2014; *State v. Pittman*, No. 104,214, 2012 WL 222950, at *4-6 (Kan. App. 2012) (unpublished opinion) (finding invited error did not bar challenge to aggregation of prior misdemeanors into a person felony); *Hubbard v. State*, No. 96,752, 2007 WL 4571089, at *3 (Kan. App. 2007) (unpublished opinion) (citing *Donaldson* in finding invited error doctrine is inapplicable to bar criminal history challenge on appeal).

However, this court at times has questioned the soundness of *Donaldson*. In *State v. Madkins*, No. 104,350, 2011 WL 4031531 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 946 (2012), the defendant filed a presentence objection to the person classification of certain 1991 and 1992 California convictions but withdrew that objection at sentencing after being warned by the district court that withdrawal of the objection could affect his sentence. On appeal, the defendant, relying on *Donaldson*,

17

reasserted his criminal history challenge, but the State responded that the defendant was barred from raising the issue by the invited error doctrine. This court sided with the State and stated:

"We question *Donaldson*'s construction of the invited error doctrine, if not its application in that case. [Citation omitted.] While a defendant may not bind a court by a stipulation to an incorrect application of the law, a defendant may bind himself or herself. [*State v. Bello*, 289 Kan. 191, 194, 211 P.3d 139 (2009)], where the issue was the applicability of the rape shield statute, is a case in point. Another example is the line of cases refusing to review a jury instruction where the complaining party had sought the instruction below. [Citation omitted.]

"The invited error doctrine applies to errors of law because it is based on estoppel, not on the personal knowledge of the defendant. [Citation omitted.] The invited error doctrine therefore applies to criminal history scores, the legal aspect of such scores notwithstanding: 'A criminal defendant who stipulates to an incorrect criminal history score cannot later complain on appeal of an illegal sentence based on that score.' *State v. Goeller*, 276 Kan. 578, Syl. ¶ 6, 77 P.3d 1272 (2003); [citation omitted]." 2011 WL 4031531, at *3.

The *Madkins* court determined that the criminal history issue was not properly before the court because of invited error. 2011 WL 4031531, at *3. Nevertheless, the court considered the issue on its merits and rejected the defendant's challenge to the person classification of his 1991 and 1992 California convictions. 2011 WL 4031531, at *3-4; see also *State v. Zoglman*, No. 110,678, 2014 WL 7152326, at *6-8 (Kan. App. 2014) (unpublished opinion) (finding challenge to person classification of pre-Guidelines crimes was barred by invited error), *petition for rev. filed* January 12, 2015.

Finally, in *State v. Hankins*, 49 Kan. App. 2d 971, 975-78, 319 P.3d 571 (2014), *petition for rev. filed* March 19, 2014, this court stated that depending on the facts of the case, the doctrine of invited error can bar a defendant who forgoes his or her statutory opportunity to challenge his or her criminal history from subsequently complaining about

18

a criminal history error on appeal. However, the defendant in *Hankins* attempted to challenge the factual existence of a prior out-of-state crime in his criminal history, not the legal question of how the crime was classified. 49 Kan. App. 2d at 975-78. As the *Donaldson* court acknowledged, if a defendant stipulates to the factual basis for the criminal history classification, he or she is barred from challenging the error on appeal. See *Donaldson*, 35 Kan. App. 2d at 543-44; see also *State v. Hunter*, No. 109,078, 2014 WL 274462, at *7-9 (Kan. App. 2014) (unpublished opinion) (defendant stipulated to factual basis of burglary as being residential; thus, defendant was barred from challenging person felony classification on appeal), *petition for rev. filed* February 18, 2014.

*Supreme Court decisions addressing stipulations at sentencing*

We also will review some Kansas Supreme Court decisions addressing the broader subject of whether a party's stipulation at sentencing bars the party from challenging the sentence on appeal. In *State v. Vandervort*, 276 Kan. 164, 173, 72 P.3d 925 (2003), the defendant was convicted of numerous sex crimes, and he appealed his convictions and his sentences. The Court of Appeals, in an unpublished opinion, refused to consider the defendant's challenge to the classification of a prior Virginia conviction in the defendant's criminal history because the defendant had stipulated to his criminal history at sentencing. See 276 Kan. at 173. The record showed that the defendant had received an amended copy of the criminal history worksheet at the sentencing hearing and did not have time to file a written objection prior to the hearing. The record also reflected that defense counsel stipulated to the criminal history at sentencing, and the trial court did not personally address the defendant regarding his criminal history.

Our Supreme Court recognized the "general rule" that a defendant who invites error by stipulating to his or her criminal history cannot request a correction of sentence under K.S.A. 22-3504 after pronouncement of the sentence. 276 Kan. at 175-76.

Nevertheless, our Supreme Court held that the Court of Appeals had erroneously refused to consider the defendant's challenge to his criminal history classification on appeal. 276 Kan. at 177. The court recognized that, pursuant to K.S.A. 21-4721(e), appellate review of criminal history errors may be granted under limited circumstances. The limited circumstances cited by the court were: (1) where the defendant did not personally give an oral stipulation in open court, as the authority to admit to prior criminal history belongs to the defendant; and (2) where the defendant and/or his or her counsel had no opportunity prior to sentencing to review the criminal history worksheet. 276 Kan. at 177.

In *State v. Goeller*, 276 Kan. 578, 77 P.3d 1272 (2003), the defendant claimed on appeal that the district court erred by including a felony conviction in his criminal history that either was or could have been used to increase the severity level of his possession of marijuana sentence. The court noted that generally, under K.S.A. 21-4721(e), an appellate court has jurisdiction to consider whether the district court erred in determining the appropriate classification of the defendant's prior convictions. 276 Kan. at 585. However, the court cited *Vandervort* for the general rule that a defendant who invites error by stipulating to his or her criminal history cannot request a correction of sentence under K.S.A. 22-3504 after pronouncement of the sentence. *Goeller*, 276 Kan. at 585. Without any further analysis, the court refused to reach the merits of the defendant's argument. 276 Kan. at 585.

*State v. McCarley*, 287 Kan. 167, 171, 195 P.3d 230 (2007), involved a stipulation by the State to the severity level of the defendant's crime. The defendant was convicted of a severity level 5 aggravated battery, but the PSI report incorrectly listed the conviction as a severity level 8 crime. At the sentencing hearing, both counsel agreed that the report was correct, and the district court mistakenly sentenced the defendant as though he had been convicted of a severity level 8 aggravated battery. After the time for appeal had expired, the State filed a motion to correct an illegal sentence, and the district court denied the motion. The Court of Appeals affirmed the district court relying in part on its

analysis that even if the sentence was illegal, the State had agreed to the severity level and the doctrine of invited error precluded any challenge. See 287 Kan. at 171.

Our Supreme Court determined that when a sentence is imposed for a crime for which the defendant was not convicted, the sentence is illegal and void. 287 Kan. at 174-75. The court held that under the specific circumstances of the case, the sentence must be set aside and the defendant must be resentenced for the crime of actual conviction. 287 Kan. at 175. Our Supreme Court determined that the doctrine of invited error was inapplicable because the alleged invited error leading to the illegal sentence concerned a matter of the court's jurisdiction. 287 Kan. at 176.

In *State v. LaBelle*, 290 Kan. 529, 532, 231 P.3d 1065 (2010), the defendant claimed he received an illegal sentence under K.S.A. 22-3504 because the district court improperly classified him as a persistent sex offender. The State claimed the defendant stipulated to his criminal history score at sentencing; thus, he could not complain about the score on appeal. Our Supreme Court recognized the general rule that a litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal. 290 Kan. at 533. But the court determined that "this rule does not preclude [the defendant's] motion to correct an illegal sentence." 290 Kan. at 533. The court considered the merits of the defendant's claim and determined that the district court erred in classifying the defendant as a persistent sex offender. 290 Kan. at 537-39.

Finally, in *State v. Weber*, 297 Kan. 805, 813-14, 304 P.3d 1262 (2013), our Supreme Court reinforced the idea that there is a distinction between stipulating to a prior crime's existence and stipulating to an incorrect legal consequence of that crime. The *Weber* court addressed, among other things, whether the district court erred in enhancing the defendant's sentence based upon the finding that a prior out-of-state crime constituted a sexually violent crime that sufficed, in part, to justify designating the defendant as an aggravated habitual sex offender. The State contended that the defendant's challenge was

barred because the defendant's trial counsel stipulated that he should be sentenced as an aggravated habitual sex offender, but our Supreme Court disagreed. 297 Kan. at 813.

"[W]e view the State's reliance on trial counsel's stipulation to be misguided. Initially, counsel had objected to the inclusion of the two Michigan convictions in Weber's criminal history score. After the State provided the defense with certified copies of the Michigan journal entries, defense counsel advised the sentencing judge that the defense was withdrawing its objection to criminal history. Accordingly, we agree with the State that Weber should be bound by his counsel's stipulation of fact in the district court with respect to his criminal history, *i.e.*, the factual stipulation that Weber was convicted in Michigan of the crime of assault with intent to commit sexual contact in the second degree. But that factual stipulation does not answer the question before us, which is: what is the *legal effect* of that prior conviction on the imposition of an enhanced sentence. . . .

"Inexplicably, defense trial counsel also conceded that the life without parole sentence . . . was mandated for Weber, which would suggest that defense counsel was stipulating to the legal effect of the admitted fact of the Michigan assault conviction. But we do not permit parties to stipulate '"as to the legal conclusions from admitted facts."' [Citation omitted.] The legal question of whether Weber's admitted criminal history was sufficient . . . to define him as an aggravated habitual sex offender subject to enhanced sentencing, '"must rest upon the court, uninfluenced by stipulations of the parties."' [Citations omitted.] Therefore, despite the concession of Weber's counsel, 'we nevertheless must address the accuracy of the purported legal basis of [Weber's] concession.' [Citations omitted.]

"Perhaps more to the point here, 'Kansas law is clear that a defendant can't agree to an illegal sentence.' [Citations omitted.]" 297 Kan. at 814-15.

In sum, earlier Kansas Supreme Court cases recognized the general rule, subject to certain exceptions, that a defendant who invites error by stipulating to his or her criminal history cannot challenge the criminal history on appeal. These earlier cases drew no distinction between a stipulation to the factual basis for the defendant's criminal history classification and a stipulation to its legal effect. But in *Weber*, the court reinforced the

idea that there is a distinction between stipulating to a prior crime's factual existence and stipulating to an incorrect legal consequence of that crime. 297 Kan. at 813-15. The *Weber* court made it clear that a defendant cannot agree to an illegal sentence. 297 Kan. at 815.

Returning to our facts, Ruiz did not personally admit his criminal history in open court, nor was he requested to do so by the judge. The only stipulation at the sentencing hearing was made by Ruiz' counsel. As the *Vandervort* court noted, "'[i]t is not defense counsel's place to admit to his or her client's prior offenses.' [Citation omitted.]" 276 Kan. at 175. See K.S.A. 2014 Supp. 21-6814(a). Based on this fact alone, Ruiz should not be barred from challenging his criminal history on appeal under the invited error doctrine.

But even if Ruiz had personally stipulated to his criminal history at sentencing, he would not be barred from claiming an error on appeal under the circumstances of this case. Ruiz is not challenging the factual existence of his California convictions. Rather, he is challenging the legal effect of scoring his out-of-state convictions as person offenses for criminal history purposes. By challenging the classification of his prior out-of-state crimes, Ruiz challenges the accuracy of his criminal history score, thereby alleging an illegal sentence. See *State v. Neal*, 292 Kan. 625, 630-31, 258 P.3d 365 (2011) (stating that where a criminal history score is incorrect, the resulting sentence is an illegal sentence).

Although this court has been inconsistent in its application of the invited error doctrine under the circumstances presented in Ruiz' case, under the *Donaldson*/*Weber* rationale, we find that because Ruiz challenges only the legal effect of the classification of his prior out-of-state crimes as person offenses, the invited error doctrine does not apply to bar his appeal. In addition, under the rationale in *Weber*, Ruiz alleges an illegal sentence, and the invited error doctrine does not bar such a challenge on appeal. Thus, we

reject the State's claim that Ruiz invited any error that may have occurred by stipulating to his criminal history, and we will address the merits of Ruiz' argument on appeal.

Ruiz argues that under *Murdock* the district court erred by classifying his 1991 California convictions involving child sex offenses as person offenses for criminal history purposes. Kansas did not begin categorizing crimes as person or nonperson offenses until 1993 when the KSGA was adopted. See K.S.A. 21-4701 *et seq.*; L. 1992, ch. 239, sec. 1 (KSGA effective July 1, 1993). K.S.A. 21-4711(e) governs the classification of out-of-state convictions for criminal history purposes. This statute provides that Kansas shall classify out-of-state crimes as person or nonperson by referring to comparable Kansas offenses. The comparable Kansas offenses must be determined as of the date the defendant committed the out-of-state crimes. See *State v. Williams*, 291 Kan. 554, Syl. ¶ 4, 244 P.3d 667 (2010).

In *State v. Murdock*, 299 Kan. 312, Syl. ¶ 5, 323 P.3d 846 (2014), *modified* by Supreme Court order September 19, 2014, a divided Kansas Supreme Court held that when calculating a defendant's criminal history that includes out-of-state convictions committed prior to the 1993 enactment of the KSGA, the out-of-state convictions must be classified as nonperson offenses. Based on the holding in *Murdock*, out-of-state pre-KSGA convictions for crimes such as murder, rape, and aggravated indecent liberties with a child must be scored as nonperson offenses for criminal history purposes—a result that clearly was never intended by the legislature when it enacted the sentencing guidelines. The *Murdock* majority absolved itself of any blame for this absurd result by stating that the solution to the problem sits with the legislature. 299 Kan. at 319.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication the Supreme Court is departing from its previous position. *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). Applying our Supreme Court's holding in *Murdock*, which we are duty bound to

24

do, we conclude that Ruiz' 1991 California convictions involving child sex offenses must be classified as nonperson felonies for criminal history purposes. Thus, we vacate Ruiz' sentence and remand for resentencing using the correct criminal history score. We do not reach the final issue that the district court erred by sentencing Ruiz based on his criminal history without requiring the State to prove it to a jury beyond a reasonable doubt.

Affirmed in part, vacated in part, and remanded with directions.