NOT DESIGNATED FOR PUBLICATION

No. 116,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES R. DUDLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Opinion filed July 27, 2018.
Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Joseph M. Penney* and *Brett D. Sweeney*, assistant county attorneys, and *Derek Schmidt*, attorney
general, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

LEBEN, J.: James Dudley set fire to toilet paper within his prison cell by sticking
pieces of pencil graphite into an electrical socket. Because the fire occurred in a structure
housing other inmates, the State charged Dudley with aggravated arson.

Dudley reached a plea agreement with the State under which he pleaded no contest
to a reduced charge of solicitation to commit arson. But before sentencing, Dudley asked
to withdraw his plea—and to represent himself without an attorney.

The court allowed Dudley to represent himself but denied his motion to withdraw the plea. Dudley has now appealed, arguing that the court was wrong on both counts. He claims the district court didn't give him sufficient warnings of the risks of self-representation and that the court should have granted the motion to withdraw his plea. We will consider each issue in turn.

I. *The Court Did Not Err in Letting Dudley Represent Himself.*

As a prison inmate, Dudley qualified for appointed counsel based on his indigency. The court appointed Joshua Andrews to represent him, and Andrews handled the case through plea negotiations and the hearing at which Dudley entered his no-contest plea. Although Dudley had asked the court to replace Andrews early on (a request the court denied), Dudley told the court at the plea hearing that he was satisfied with the job Andrews had done.

Before sentencing, though, Dudley again asked for new counsel, saying that he wanted to pursue a defense of prosecutorial retaliation. He also moved to withdraw his plea, alleging he had entered the plea under duress. At a status hearing, Dudley complained to the court that Andrews had let Dudley enter the plea even though Dudley had a defense of prosecutorial retaliation to the charge.

Because Dudley was claiming that Andrews hadn't properly represented him, the court appointed a new attorney, Blake Cooper. But Dudley told the court he would want to represent himself if Cooper wasn't willing to pursue the prosecutorial-retaliation defense. The court told Dudley to speak with Cooper before deciding to represent himself.

At a later hearing, Dudley told the court he wanted to represent himself. That led to an extensive exchange of information between Dudley and the court.

2

The court reviewed with Dudley caselaw from the United States Supreme Court and the Kansas Supreme Court about the right to an attorney and the right to self-representation. From the hearing transcript, it appears that the court also gave Dudley copies of some cases.

The court explained that "[a] knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation." The court noted that "[t]he right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant[.]" It added that self-representation usually produces less-satisfactory results for a criminal defendant. And the court told Dudley that "Mr. Cooper is a well respected, well regarded, experienced trial—criminal trial attorney."

But at that point, Dudley interrupted: "No disrespect, Your Honor, but I don't care." He continued, "I'm pro se in this matter. I waive my [Sixth] Amendment right to appointment of counsel. I will not be forced with counsel."

The court then allowed Dudley to represent himself, but said that Cooper would remain as "standby counsel." That meant that Dudley had Cooper available to answer questions, explain procedures, and help out as needed.

On appeal, Dudley argues that the district court didn't sufficiently advise him of the dangers of self-representation. Based on that, he contends that allowing him to represent himself violated his Sixth Amendment right to an attorney.

He's right that the waiver of an attorney must be "knowing and intelligent," *State v. Miller*, 44 Kan. App. 2d 438, 441, 237 P.3d 1254 (2010), something the district court recognized. In his appellate brief, Dudley notes only two dangers of self-representation

3

he says the district court didn't advise him of: (1) that he would be held to the same legal standards as a lawyer and (2) that formally trained lawyers have to show some training and competence to practice law.

What a trial court must explain to the defendant varies in part based on the circumstances of the individual defendant and the stage of the proceedings. See *Patterson v. Illinois*, 487 U.S. 285, 298, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988); *Braun v. Ward*, 190 F.3d 1181, 1186 (10th Cir. 1999). Here, of course, Dudley represented himself on a motion to withdraw his plea and at sentencing, not at trial. While the issues he addressed were still significant, they didn't present a need for detailed understanding of the rules of evidence or trial procedure.

From our review of the record, we conclude that Dudley made a knowing and intelligent waiver of his right to an attorney. This wasn't his first criminal case and wasn't his first hearing in this case; he'd seen a lot about how things worked. The court told him that results are generally better when a defendant is represented by an attorney, gave him information about the caselaw on self-representation and the right to counsel, and explained that his appointed attorney, Cooper, was a good and experienced attorney.

If given a do-over, the trial judge might choose to focus more on language understandable by a layperson than language found in caselaw. Statements like the court "will not presume acquiescence in the loss of fundamental rights" may well go over the head of a layperson. But the judge sufficiently explained the dangers of self-representation, and Dudley made his choice with that knowledge in hand. We find no error in the district court's decision to honor Dudley's choice—one he had a right to make—to represent himself.

4

II. *The Court Did Not Err in Denying Dudley's Motion to Withdraw His No-Contest Plea.*

Dudley's second claim is that the district court should have granted his motion to withdraw his no-contest plea. The district court may allow plea withdrawal before sentencing, and Dudley contends he showed good cause to do so because he wanted to raise a claim of misconduct by the prosecutor.

Exactly what claim Dudley wanted to make is a bit unclear. At one point he told the district court that he wanted to raise a defense of prosecutorial retaliation. Dudley specifically told the district court that his attorney had said he could raise that defense at sentencing even after entering the no-contest plea. But Dudley had also told the district court that he had filed a federal-court lawsuit against the Butler County Attorney's office and the lead prosecutor in Dudley's case. So Dudley may have wanted to preserve the ability to claim prosecutorial retaliation against him in that federal lawsuit.

On appeal, Dudley's attorney concedes that "[t]here is no such defense" as prosecutorial retaliation. She suggests instead that "the defense he was actually interested in pursuing was a claim of either vindictive prosecution or selective or discriminatory prosecution." But Dudley's appellate brief doesn't show that such a claim had any chance of success. Instead, the brief argues that the potential success of the defense in this criminal case was irrelevant—that the significance of it was that it was it was important to Dudley, such that he wouldn't have entered the no-contest plea had he known he was giving up this defense.

The district court held an evidentiary hearing on Dudley's motion to withdraw his plea. Dudley testified in support of his motion, but no one served a subpoena on Andrews, the attorney who had represented Dudley at the plea hearing. Dudley testified that he had wanted to pursue a defense of prosecutorial retaliation. He complained that

5

Andrews had let him enter the plea, "inadvertently abandon[ing]" the prosecutorial-retaliation defense. Dudley said that his "attorney failed to research the issue." So he asked that he be allowed to withdraw the plea "to enforce my right to pursue my own defense, which is going to be a prosecutorial retaliation defense."

The district court denied the motion, concluding that Dudley hadn't shown good cause to withdraw his plea. The court noted that it had discussed with Dudley at the plea hearing that the court was not making any assurances about the effect of the plea on his federal claims. The court said it didn't believe that Andrews had told Dudley he could still pursue a prosecutorial-retaliation defense, concluding instead that Andrews simply advised that "this was a good plea agreement." The court concluded that Dudley had received competent representation by Andrews, that Dudley hadn't been misled, coerced, or unfairly taken advantage of, and that the plea was fairly and understandably made.

With that background, let's turn to the rules by which we must decide the appeal of this issue. A plea may be withdrawn before sentencing upon a showing of good cause and within the sound discretion of the district court. K.S.A. 2017 Supp. 22-3210(d)(1). On appeal, the defendant must show that the trial court abused its discretion in denying the motion to withdraw the plea. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006); *State v. Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 1, 343 P.3d 544 (2015). A district court abuses its discretion if it makes an error of fact or law or if its discretionary judgment call is one that no reasonable person could agree with. See *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 (2015); *Ruiz*, 51 Kan. App. 2d at 218.

In determining whether the defendant showed good cause, the district court must consider three factors, known as the *Edgar* factors (because they were announced in the *Edgar* decision): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage

6

of; and (3) whether the plea was fairly and understandably made. *Edgar*, 281 Kan. at 36; *Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 2.

The district court noted the *Edgar* factors and found that each of them supported its decision. The record supports its conclusion:

- *Representation by Competent Counsel*. The trial court had, of course, observed Andrews' representation of Dudley, and Dudley had told the court at the plea hearing that he was satisfied with the services of his attorney. While Andrews didn't testify at the hearing on the motion to withdraw plea, he had told the court at an earlier hearing "that I advised him that I did not think there was a legal basis to pursue a prosecutorial retaliation claim." That seems to have been a reasonable conclusion—one that Dudley has not shown to be incorrect. On appeal, as we already noted, he has conceded that a prosecutorial-retaliation claim wouldn't have been a valid defense. Since Dudley has not cited a case suggesting such a claim constitutes a valid defense to a criminal charge, we accept his concession for the purpose of this appeal. See *State v. Spencer Gifts,* 304 Kan. 755, 770, 374 P.3d 680 (2016). As for the claim of vindictive or selective prosecution that Dudley suggests in his appellate brief he wanted to preserve, such a claim requires that the defendant show that others who were similarly situated generally were not prosecuted for similar conduct and that the government singled out the defendant for prosecution based on arbitrary or invidious criteria. *State v. Robinson*, 55 Kan. App. 2d 464, Syl. ¶ 1, 417 P.3d 1087 (2018), *pet. for review filed* April 30, 2018. At no time in the proceedings before the district court (or on appeal, for that matter) has Dudley attempted to make such a showing. And, of course, the plea agreement Dudley's attorney helped him get gave a significant benefit to Dudley, primarily a reduction in the severity-level category of the felony charge (thus significantly lowering the presumptive guideline prison sentence) from level 6 to level 10, the lowest level for a felony. We find nothing to suggest that Andrews' representation of Dudley was anything but competent and appropriate.

- *Whether Dudley Was Misled, Coerced, Mistreated, or Unfairly Taken Advantage of.* The only complaint Dudley made about the process was that he believed he had lost the right to pursue a valid prosecutorial-retaliation claim. He claimed this was important to his federal lawsuit, but the district court noted that it had explained to him at the plea hearing that the court made no assurances about how his plea might affect the federal case. Dudley said at the plea hearing that he understood that. The court's discussion with Dudley at the plea hearing was detailed and appropriate. Here too, we find nothing to suggest that Dudley was misled, coerced, or unfairly taken advantage of.

- *Whether the Plea Was Fairly and Understandably Made*. The trial court heard Dudley's testimony that he had not understood that he was somehow waiving a prosecutorial-retaliation defense. The same judge presided over all the other pretrial hearings, including the plea hearing. That judge concluded that Dudley hadn't been misled. Given the detailed discussion at the plea hearing, we certainly cannot reweigh Dudley's testimony against the plea-hearing transcript and conclude that he didn't understand what he was doing. As the court noted at the plea hearing, Dudley had filed several motions on his own—and Dudley told the court that no one had helped him with them. Based on that, the court concluded that he was "plenty intelligent to understand legal concepts . . . and what's going on today." Given the record before us, we cannot second-guess the trial court on its conclusion that Dudley understood what he was doing when he entered the plea, either.

In sum, the district court had the discretion to grant or deny Dudley's motion to withdraw his plea. In doing so, the court had to consider the *Edgar* factors. The court did that, and we find no way in which its conclusions were based on any significant errors of law or fact. We conclude that a reasonable person could agree with the district court's decision to deny the motion, and we accordingly find no cause to reverse its decision.

8

We therefore affirm the district court's judgment.

.