NOT DESIGNATED FOR PUBLICATION

No. 115,296

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAYLYN MAURICE BRADLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed October 12, 2018. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and MALONE, JJ.

LEBEN, J.: Jaylyn Bradley appeals the district court's denial of his request to withdraw his guilty plea to sexual exploitation of a child. Bradley mainly argues that he should have been allowed to withdraw the plea because the alleged victim had recanted her allegation against him.

But Bradley presented no actual evidence of that to the district court. There was no convincing evidence that a statement Bradley said the victim had written actually was from her—and the court found the statement inadmissible, a finding Bradley hasn't

challenged on appeal. We reverse a district judge's decision on a motion to withdraw a plea only for abuse of discretion, and we find no abuse of discretion here.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Bradley with one count of aggravated human trafficking in December 2013. The State alleged that Bradley had transported a minor, Y.A.M., to motels to engage in prostitution. In January 2015, as part of a plea agreement, the State amended the charge to sexual exploitation of a child, and Bradley pleaded guilty.

Before sentencing—and after the attorneys who had been representing Bradley withdrew—Bradley moved to withdraw the guilty plea. The motion gave three reasons to support withdrawal: (1) that one of the State's witnesses was promised benefits in exchange for her testimony; (2) that newly discovered evidence suggested the State's key witness, the victim, had lied during her testimony; and (3) that Bradley's plea wasn't knowingly and voluntarily entered into because he hadn't had enough time to consider it and hadn't fully understood it.

With a new attorney representing Bradley, the district court heard evidence from both sides on Bradley's motion. The court heard five witnesses: Bradley; Bradley's mother, Patreese Reid; a defense investigator, Roger French; Bradley's original attorney, Charles O'Hara; and O'Hara's son, Chris O'Hara, who had assisted in representing Bradley during the hearing in which Bradley entered the guilty plea.

Bradley testified that he felt he had been pressured into taking the plea, though he agreed that he had told the court at the plea hearing that he had not been threatened or coerced in any way. The testimony about statements Y.A.M. might have made after the trial came from Reid. She testified that she had been contacted on Facebook by a person she believed to be Y.A.M. Reid also said she received (from a friend of her daughter's)

2

the one-sentence statement that purported to be from Y.A.M. and a video that purported to show a person Reid thought was Y.A.M. signing something.

But not testifying was Y.A.M. French testified that he hadn't been able to locate her. Even so, Bradley wanted the court to admit into evidence the one-sentence written statement that he said was from Y.A.M.: "I, [Y.A.M.], was promised citizenship in trade for false testimony against Jaylyn M. Bradley." But because Y.A.M.'s was not present to testify and be cross-examined, the district court sustained the State's hearsay objection to both the exhibit and to the post-plea statements Y.A.M. had supposedly made to Reid through Facebook. The court admitted the video into evidence, apparently because it was offered in part in an attempt to provide a foundation for the admission of the statements.

The district court denied the motion to withdraw Bradley's plea. The court said that there had been no evidence admitted on Bradley's claim that one of the State's witnesses was promised some benefit in exchange for testimony. (Bradley is not pursuing that claim on appeal.) The court found "no credible evidence" either that Y.A.M. had testified falsely or that Bradley had entered his plea based on pressure or a failure to understand what he was doing.

Bradley has appealed to our court.

ANALYSIS

With that background, we turn next to the rules by which we must decide this appeal. A plea may be withdrawn before sentencing on a showing of good cause and within the sound discretion of the district court. K.S.A. 2017 Supp. 22-3210(d)(1). On appeal, the defendant must show that the trial court abused its discretion in denying the motion to withdraw plea. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006); *State v. Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 1, 343 P.3d 544 (2015). A district court abuses its

3

discretion if it makes an error of fact or law or if its discretionary judgment call is one that no reasonable person could agree with. *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 (2015); *Ruiz*, 51 Kan. App. 2d at 218.

The district court must consider a series of factors—known as the *Edgar* factors because they were announced in that case—when deciding whether to allow a plea withdrawal: whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *Edgar*, 281 Kan. at 36; *Ruiz*, 51 Kan. App. 2d 212, Syl. ¶ 2. Although those factors must be considered, they aren't an exhaustive list of factors that may be relevant, and the court may consider other factors. See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

Here, Bradley says on appeal that "the *Edgar* factors are mostly inapplicable." Instead, he argues that the "main issue before the district court was whether or not newly discovered evidence of a recantation from the alleged victim" constituted good cause to withdraw the guilty plea.

What Bradley does *not* argue on appeal, however, is the district court's ruling that the statements he tried to introduce from Y.A.M. were inadmissible hearsay. So any question about their admissibility has been abandoned on appeal. See *State v. Littlejohn*, 298 Kan. 632, 655-56, 316 P.3d 136 (2014). We are left, then, with a record in which there is *no evidence* that Y.A.M. has actually recanted *anything*.

That substantially undercuts the main basis for Bradley's motion. After all, Y.A.M. testified, under oath, at the preliminary hearing. And it was held several months before Bradley entered his guilty plea.

4

In her sworn testimony at the earlier hearing, Y.A.M. said that Bradley's girlfriend posted an advertisement for Y.A.M. as an escort in Wichita. At the time, Y.A.M. was staying at a Wichita motel; she said that Bradley and his girlfriend would come to the motel to "check up on me." She said that the customers who called asked for sex, and she charged for her time. Y.A.M. said that the woman she knew as Bradley's girlfriend set the prices and that when Y.A.M. made appointments outside the motel, either Bradley or his girlfriend would drive her there. She said that she would give the money to one of them, although she understood that the money ended up with Bradley.

The district court had that sworn testimony as part of its record. It had no admissible evidence that Y.A.M. had recanted. So the court concluded that "no credible evidence" supported the claim that Y.A.M. had recanted and explained why hearsay evidence isn't considered credible:

> "We simply have no credible evidence of new information. What centuries have taught us and why we have the rules of evidence is that we need to have legal proceedings in court, subject to scrutiny of the judicial process, cross-examination[,] and that testimony be given under oath. This is exactly the reason why. You start getting into hearsay, to third parties interjecting things, frequently maybe a witness will say something to one side because they think that's what they want to hear and say something different to the other side. That's why we require an oath in court, subject to cross-examination and subject to contempt and criminal charges if there's lying. And we don't have that."

Although Bradley doesn't emphasize the *Edgar* factors on appeal, the third claim he raised before the district court—that the plea wasn't knowingly and voluntarily entered into because he hadn't had enough time to consider it and hadn't fully understood it— does fit within the *Edgar* factors. But here too, Bradley's claim isn't supported by the evidence, though here we must rely on the district court's role as the fact-finder.

The same judge who heard the evidentiary hearing on Bradley's motion to withdraw his plea also took the plea. That judge again found "no credible evidence" to support Bradley's claim that he didn't understand what he was doing or was coerced in any way when he pleaded guilty:

> "Final [claim by Bradley] is [that] defendant did not fully understand the plea, [was] not given adequate time to discuss the plea, the plea was not knowing and voluntary. Again, I find no credible evidence of this. This was a plea that was discussed numerous times over the course of a day, two different court [hearings]. The Court even allowed the second—to kind of go the second mile with the defendant in allowing him to talk with his mother about this, she was involved. He was competently represented by [his attorneys], there's no evidence that he was forced or threatened to enter the plea."

The court noted the extensive discussion it had had with Bradley at the plea hearing, including his statements that he had not been coerced or pressured into entering the plea.

That's the substance of the issue before us. The district court, which acts as the fact-finder, heard evidence and found "no credible evidence" to support the key factual claims underlying Bradley's motion.

Rather than focusing on these central conclusions of the district court, Bradley's appellate brief mainly tries another tack to convince us the district court abused its discretion. Recall that the district court can do so not only by making an overall decision that's unreasonable but also by relying on a factual or legal error when making its decision. So claims of factual or legal error are the focus of Bradley's brief.

Before we briefly discuss each of them individually, we note that even when the district court makes a factual error, that shouldn't lead to overturning its decision unless the fact at issue was material (or important enough) to its decision. See *Huffman v. City of*

6

*Maize*, 54 Kan. App. 2d 693, 696, 404 P.3d 345 (2017). We are confident that the district court made no factual errors significant in any way to its central conclusions:

- Bradley complains that the court found that the video "not credible" even though Reid testified it was Y.A.M. depicted in it. But the video wasn't presented as direct proof of a recantation by Y.A.M.—even if Y.A.M. is the woman in the video, she makes no statements in it. Rather, the video was simply intended to provide a foundation for the admission of the written statement, which itself was intended to prove that Y.A.M had recanted. The video wasn't significant substantive evidence of anything; it was intended as a foundation for other evidence. Bradley didn't succeed in gaining the admission of that evidence. And the hearsay ruling keeping out that other evidence isn't challenged on appeal.

- Although the district court denied admission of the written statement Bradley attributed to Y.A.M., Bradley suggests that the court erroneously relied on some of the statement's contents. Bradley points to the court's comments that Y.A.M. had some relationship with Bradley's family members and that it "would only be natural that outside of the courtroom, not under oath," she might backtrack on her allegations in talking to family members. Once again, though, we read the judge's comments as related to reasons for refusing the admission of Y.A.M.'s written statement as unreliable hearsay, not factual findings on the core issues being decided.

- Bradley complains that another reason the district court cited for finding Y.A.M.'s written statement unreliable was that she made her statements "to get a better deal on [her] sentencing, hopefully, or with the hope that [she] might be able to get a better deal." The district court was wrong on that point. The court had confused Y.A.M's situation with that of Bradley's girlfriend, who had been separately charged. But Bradley's attorney pointed this error out to the court before the hearing ended, and the court recognized its error: "I'm wrong on that." The court also said that didn't change its conclusions, again explaining that because Y.A.M. had a relationship with the defendant and his family, she might naturally "mak[e]

7

comments like this, if she did even make these comments." Again, the court's primary focus was noting the unreliability of the statements ("if she did even make these comments"), which it had excluded on hearsay grounds.

- Bradley's final complaint is that the district court was wrong when it said that Charles O'Hara, one of Bradley's prior attorneys, had testified "that he was presented with this and he did not—words to the effect that he did not see a legal reason to withdraw the plea and . . . that he declined to move forward with this." That statement was incorrect in that O'Hara never knew about the purported statement from Y.A.M., which came after O'Hara withdrew from the case. But the Y.A.M. statement never got admitted, so it provided no basis to set aside the plea—whether O'Hara referenced it or not. And the court also found that Bradley's prior attorneys "never got the feeling that the defendant was forced or not voluntarily entering the plea," a finding supported by the evidence and that supported the court's denial of the motion.

In sum, Bradley's motion to withdraw plea was premised on two main points: (1) that Y.A.M. had recanted her testimony and (2) that Bradley had felt pressured and hadn't really understood what he was doing when he entered the guilty plea. The district court correctly concluded that no admissible evidence supported the first point, and substantial evidence supported the district court's conclusion that Bradley hadn't proven the second one. We find no abuse of discretion in the district court's denial of Bradley's motion.

We affirm the district court's judgment.