No. 104,658

STATE OF KANSAS, *Appellee*, v. ROBERT WEBER, *Appellant*.

(304 P.3d 1262)

Opinion filed July 5, 2013.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Robert Weber directly appeals his convictions and sentences for rape and attempted rape. Weber was sentenced to two terms of life in prison without parole as an aggravated habitual sex offender, pursuant to K.S.A. 2009 Supp. 21-4642. On appeal, he claims that (1) his convictions for rape and attempted rape are multiplicitous, in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights; (2) a prior Michigan conviction does not qualify as a "sexually violent crime" so as to support a finding that he was an aggravated habitual sex offender; (3) there was insufficient evidence to support all of the charged alternative means of committing rape; (4) the jury instruction for the overt act element of attempted rape was broader than the charging document; and (5) K.S.A. 2009 Supp. 21-4642 provides for an unconstitutional enhancement of the statutory sentence based upon facts that have not been proved to a jury beyond a reasonable doubt.

We agree that both convictions cannot stand and, accordingly, we reverse Weber's conviction for attempted rape. The sentence on the remaining rape conviction is vacated, and the case is remanded for the district court to determine whether the State has established that Weber meets the statutory definition of an aggravated habitual sex offender under K.S.A. 2009 Supp. 21-4642. The reversal of the attempted rape conviction as multiplicitous renders moot Weber's challenge to the jury instruction on that count. Finally, we reiterate that rape is not an alternative means crime and that the aggravated habitual sex offender provisions of K.S.A. 2009 Supp. 21-4642 are constitutional.

FACTUAL AND PROCEDURAL OVERVIEW

Weber became acquainted with M.E.W., an 80-year-old woman, through a church prison ministry. In November 2009, M.E.W. brought Weber to her home to assemble shelves in her basement. The two worked together in the basement until M.E.W. went upstairs to change clothes.

While M.E.W. was changing clothes in her bathroom, Weber entered the room and said something like "I have to do this." He then threw M.E.W. to the floor and proceeded to remove her

clothing, while she struggled and implored him not to rape her. Weber positioned himself on top of M.E.W. and unsuccessfully attempted to penetrate her vagina with his penis. After M.E.W. told him she had not had sex with anyone since her husband died 12 years before, Weber forced his fingers inside her vagina before again attempting penile penetration. Weber never accomplished penile penetration, ultimately ejaculating on M.E.W.'s thigh.

After the assault, Weber left the house while M.E.W. called 911. The responding law enforcement officer found Weber waiting outside M.E.W.'s house and took him into custody. He was charged with one count of rape and one count of attempted rape. The jury convicted Weber on both counts.

The presentence investigation report (PSI) reflected that Weber had two prior convictions from the State of Michigan, one of which was for assault with intent to commit criminal sexual conduct in the second degree (assault). The sentencing court proceeded to sentence Weber as an aggravated habitual sex offender under K.S.A. 2009 Supp. 21-4642, based in part on the prior Michigan assault conviction being for a "sexually violent crime." But the sentencing court did not make any findings in that regard, apparently relying on the defense attorney's acquiescence in the application of the sentence enhancement provisions of K.S.A. 2009 Supp. 21-4642. The district court sentenced Weber to two consecutive life sentences without possibility of parole. He appeals his convictions and sentences.

## MULTIPLICITY

Weber argues for the first time on appeal that his convictions for rape and attempted rape are multiplicitous because they were based upon the same, or unitary, conduct. Multiplicity is the charging of a single offense in several counts of a complaint or information. *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009). Multiplicitous convictions violate a defendant's rights under the Double Jeopardy Clauses of both the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights because they constitute multiple punishments for a single offense. *Thompson*, 287 Kan. at 244.

Although Weber did not raise this issue below, we have previously considered multiplicity challenges for the first time on appeal to serve the ends of justice or prevent a denial of fundamental rights. See *State v. Colston*, 290 Kan. 952, 971, 235 P.3d 1234 (2010); *State v. Nguyen*, 285 Kan. 418, 433, 172 P.3d 1165 (2007). In that vein, we will address Weber's multiplicity issue.

*Standard of Review*

Appellate courts exercise unlimited review when determining whether convictions are multiplicitous. *State v. Holman*, 295 Kan. 116, 147, 284 P.3d 251 (2012).

*Analysis*

In *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), we set forth the framework for determining whether multiple convictions subject a defendant to double jeopardy. First, we ask whether the convictions arose from the same or unitary conduct. If not, multiplicity is inapplicable; if so, we next consider whether the conduct, by statutory definition, constitutes one offense or two. If both components are met—unitary conduct statutorily defined as one offense—double jeopardy is violated when the defendant is convicted of more than one offense. 281 Kan. at 496-97.

Weber argues that his convictions for rape and attempted rape arose from the same conduct—his attempt to accomplish penile penetration of M.E.W. The underlying facts upon which we must analyze the nature of Weber's conduct are not disputed by the parties, *i.e.*, the State does not argue a different factual scenario than the defense. The dispute centers on how to characterize the undisputed facts.

*Schoonover* set forth four factors to aid in the consideration of whether a defendant's convictions arose from unitary, *i.e.*, the same conduct: (1) whether the acts occurred at or near the same time, (2) whether the acts occurred at the same location, (3) whether a causal relationship existed between the acts, in particular whether an intervening event separated the acts, and (4) whether a fresh impulse motivated some of the conduct. *Schoonover*, 281 Kan. at 497. The State concedes that the first two *Schoonover* factors were met in the present case. Namely, that the attempted penile pen-

etration occurred just before and right after the digital penetration in the same location (the victim's bathroom).

But the State argues that Weber's inability to accomplish penile penetration constituted an intervening event that separated the attempted penile penetration from the digital penetration. The State asserts that this intervening event created Weber's fresh impulse to accomplish digital penetration. The State relies upon *State v. Sellers*, 292 Kan. 346, 253 P.3d 20 (2011), to support its argument. The State's reliance on *Sellers* is unavailing.

In *Sellers*, the defendant was convicted of two counts of aggravated indecent liberties with a child. In determining whether Sellers' convictions arose from unitary conduct, we acknowledged that consideration of the last two *Schoonover* factors was a close call. However, we ultimately determined that Sellers' conduct was not unitary when he touched the victim, left the room for 30 to 90 seconds to check on a barking dog, returned to the room, and touched the victim a second time. 292 Kan. at 359-60. We held that Sellers' act of leaving the room, for a few moments broke the chain of causality and gave Sellers an opportunity to reconsider his felonious course of action. 292 Kan. at 360.

Here, no external event, such as a barking dog, disrupted Weber's attempt to rape M.E.W. Instead, Weber embarked upon the singular act of raping M.E.W. and continued in that endeavor until he ejaculated. The inference that Weber utilized the digital penetration to assist him in accomplishing his ultimate goal of penile penetration is corroborated by the fact that he attempted penile penetration both before and after the use of his fingers. In that context, the State's argument that Weber's inability to accomplish penile penetration constituted an intervening event is nonsensical. An intervening event, by its very nature, contemplates an interruption of causation, that is, incidents are considered factually separate when there is "an intervening event, *as opposed to a causal relationship between the acts*." (Emphasis added.) *State v. Foster*, 290 Kan. 696, 713, 233 P.3d 265 (2010). Here, there was a direct causal relationship between the two acts, rather than an interruption of one act. Weber's inability to accomplish penile penetration *caused*

him to resort to digital penetration before returning to his attempted penile penetration.

Further, the evidence does not support the existence of a fresh impulse to commit a separate act of digital rape. Rather, the evidence indicates that Weber was not deterred from his original intent to accomplish rape by penile penetration, despite his failure to do so. We therefore find that Weber's convictions for rape and attempted rape arose from the same unitary course of conduct.

Because we find unitary conduct, *Schoonover* suggests that we move to the second step of determining whether the conduct, by statutory definition, constitutes one offense or two. See 281 Kan. at 497. We believe the answer in this case is to be found in the statute that addresses multiple prosecutions for the same act, K.S.A. 21-3107, which provides in relevant part:

"(1) When the *same conduct* of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, *but not both. A lesser included crime is:*

. . . .

(c) an *attempt* to commit the crime charged." (Emphasis added.)

The prohibition against convicting a defendant for both the crime charged and an attempt to commit the crime charged is an explicit statement by the legislature that the unitary conduct forming the basis for both charges is to be defined as one offense. To state the obvious, Weber's convictions for rape and attempted rape arose from unitary conduct; pursuant to K.S.A. 21-3107(2)(c), the attempted rape is a lesser included offense of rape; and pursuant to K.S.A. 21-3107(2), Weber cannot be convicted of both the rape and the attempt to commit the rape. See also *State v. Hernandez*, 294 Kan. 200, 207, 273 P.3d 774 (2012) ("K.S.A. 21-3107[2][c] prohibits conviction of both the crime charged and an attempt to commit the crime charged.").

Consequently, Weber's conviction for attempted rape was constitutionally invalid because it was multiplicitous. The attempted

rape conviction must be reversed, and the corresponding sentence is vacated.

### Aggravated Habitual Sex Offender

The district court imposed a sentence of life imprisonment without parole pursuant to the sentence enhancement provisions of K.S.A. 2009 Supp. 21-4642(a) that mandate the no-parole life sentence for persons who are designated as aggravated habitual sex offenders. K.S.A. 2009 Supp. 21-4642(c)(1) defines an "aggravated habitual sex offender" as

"a person, who, on and after July 1, 2006: (A) Has been convicted in this state of a sexually violent crime, as described in paragraphs (3)(A) through (3)(J) or (3)(L); and (B) prior to the conviction of the felony under subparagraph (A), has been convicted on at least two prior conviction events of any sexually violent crime."

Under subparagraph (3)(A), rape is designated as a "sexually violent crime," so that Weber's rape conviction in this case fulfills the requirement of subsection (A) of the aggravated habitual sex offender definition. The question presented here is whether Weber had the requisite two prior conviction events of any sexually violent crime as required by subsection (B) of K.S.A. 2009 Supp. 21-4642(c)(1). More specifically, Weber challenges whether the Michigan assault is a "sexually violent crime" that would qualify as one of those required prior conviction events.

*Standard of Review*

A determination of whether Weber may be sentenced as an aggravated habitual sex offender is a mixed question of fact and law. When reviewing a mixed question of fact and law, an appellate court reviews the district court's factual findings for substantial competent evidence and reviews the district court's legal conclusions de novo. *State v. Fisher*, 283 Kan. 272, 286, 154 P.3d 455 (2007). Here, however, the district court made no factual findings, impeding our review.

*Analysis*

We begin by noting that the State does not directly address the question of whether the Michigan assault qualifies as a sexually violent crime for K.S.A. 2009 Supp. 21-4642(c)(1)(B) purposes. Its

brief points out that, under K.S.A. 2009 Supp. 21-4642(c)(3)(K), the definition of sexually violent crime includes "any federal or other state conviction for a felony offense that under the laws of this state would be a sexually violent crime as defined in this section." But the State does not explain why the Michigan assault would be a sexually violent crime in this state, and none of the Kansas crimes specifically designated as sexually violent crimes in K.S.A. 2009 Supp. 21-4642(c)(3)(A) through (J) appear to be obviously comparable to the Michigan crime of assault with intent to commit criminal sexual conduct in the second degree.

Further, the State alludes to the catch-all provision in K.S.A. 2009 Supp. 21-4642(c)(3)(M) under which the definition of sexually violent crime encompasses "any act which at the time of sentencing for the offense has been determined beyond a reasonable doubt to have been sexually motivated." That provision further defines "sexually motivated" as meaning that "one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2009 Supp. 21-4642(c)(3)(M). But the Michigan sentencing order on the assault conviction that the State admitted at Weber's sentencing in this case does not reflect that the Michigan sentencing court made any finding about sexual motivation or intended sexual gratification when imposing sentence on that assault conviction.

Instead, the State takes the tack that we should refuse to consider Weber's sentencing challenge because it is procedurally barred. The State argues that Weber's trial counsel stipulated that Weber should be sentenced as an aggravated habitual sex offender and further suggests that Weber waived the issue by failing to raise it before the district court. We disagree on both grounds.

With respect to the State's waiver argument, K.S.A. 22-3504(1) specifically authorizes a court to correct an illegal sentence at any time. We reiterated recently that this means that "an illegal sentence issue may be considered for the first time on appeal." *State v. Floyd*, 296 Kan. 685, 690, 294 P.3d 318 (2013). Moreover, if a prior conviction is erroneously included in the calculation of an enhanced sentence under the Habitual Criminal Act, the resulting sentence is illegal as not conforming to the statutorily authorized

term of punishment. See *State v. Walker*, 277 Kan. 849, Syl. ¶ 1, 89 P.3d 920 (2004). Therefore, if the district court erroneously included the prior Michigan assault conviction in calculating Weber's enhanced sentence under the aggravated habitual sex offender provision, the resulting sentence is illegal and is subject to challenge here and now.

Likewise, we view the State's reliance on trial counsel's stipulation to be misguided. Initially, counsel had objected to the inclusion of the two Michigan convictions in Weber's criminal history score. After the State provided the defense with certified copies of the Michigan journal entries, defense counsel advised the sentencing judge that the defense was withdrawing its objection to criminal history. Accordingly, we agree with the State that Weber should be bound by his counsel's stipulation of fact in the district court with respect to his criminal history, *i.e.*, the factual stipulation that Weber was convicted in Michigan of the crime of assault with intent to commit criminal sexual contact in the second degree. But that factual stipulation does not answer the question before us, which is: what is the *legal effect* of that prior conviction on the imposition of an enhanced sentence. If the Michigan assault does not fit within the Kansas definition of a sexually violent crime, then it could not be used as one of the prior conviction events required by K.S.A. 2009 Supp. 21-4642(c)(1)(B), and Weber would not be an "aggravated habitual sex offender" subject to the enhanced sentence of K.S.A. 2009 Supp. 21-4642(a).

Inexplicably, defense trial counsel also conceded that the life without parole sentence of K.S.A. 2009 Supp. 21-4642(a) was mandated for Weber, which would suggest that defense counsel was stipulating to the legal effect of the admitted fact of the Michigan assault conviction. But we do not permit parties to stipulate " 'as to the legal conclusions from admitted facts.' " *Urban Renewal Agency v. Reed*, 211 Kan. 705, 712, 508 P.2d 1227 (1973) (quoting 50 Am. Jur., Stipulations § 5). The legal question of whether Weber's admitted criminal history was sufficient to meet the requirements of K.S.A. 2009 Supp. 21-4642(c)(1)(B), so as to define him as an aggravated habitual sex offender subject to enhanced sentencing, " 'must rest upon the court, uninfluenced by stipulations

of the parties.' " *Urban Renewal Agency*, 211 Kan. at 712 (quoting 50 Am. Jur., Stipulations § 5). Therefore, despite the concession of Weber's counsel, "we nevertheless must address the accuracy of the purported legal basis of [Weber's] concession." *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 400, 266 P.3d 516 (2011); see also *Ritchie Paving, Inc. v. City of Deerfield*, 275 Kan. 631, 641, 67 P.3d 843 (2003) ("Stipulations as to what the law is are not effective and not controlling on this court.").

Perhaps more to the point here, "Kansas law is clear that a defendant can't agree to an illegal sentence. *State v. Jones*, 293 Kan. 757, 757-78, 268 P.3d 491 (2012); *State v. Duncan*, 291 Kan. 467, 470-71, 243 P.3d 338 (2010)." *State v. Burton*, No. 105,656, 2012 WL 2148179, at *1 (Kan. App. 2012) (unpublished opinion). Accordingly, the State's alleged procedural bar emanating from a defense stipulation that K.S.A. 2009 Supp. 21-4642(a) applied in this case is simply unavailing.

Unfortunately, at sentencing the district court did not independently determine whether Weber fit within the statutory definition of an aggravated habitual sex offender. Rather, the sentencing court relied upon the prosecutor's declaration that Weber had "the two requisite prior convictions," as evidenced by the journal entries of the Michigan convictions. As the State points out, defense counsel did not refute the prosecutor's declaration. But as we suggested above, that acquiescence did not absolve the court of its duty to decide the questions of law necessary to impose sentence. One of those questions of law was whether Weber's prior Michigan assault conviction constitutes a sexually violent crime for purposes of K.S.A. 2009 Supp. 21-4642(c)(1)(B).

The record before us does not appear to support a finding that the Michigan assault conviction meets the definition in Kansas for a sexually violent crime. But the State contends that the defense's failure to challenge the assault conviction in the district court resulted in an insufficient record for a meaningful appellate review. The State suggests that it would have provided additional information relating to Weber's Michigan conviction if it had been necessary to establish that the crime was a sexually violent crime. Although we view that claim with skepticism, we acknowledge that

factual determinations could impact the legal question presented and we should not be making factual findings in the first instance.

"We review the factual determinations of the district court to determine whether the facts as found by the district court are supported by substantial competent evidence. [Citation omitted.] We do not reweigh evidence or reassess credibility. [Citation omitted.] We then determine de novo whether those facts as a matter of law support the legal conclusion of the district court. [Citation omitted.] When the record on review does not support a presumption that the district court found all the facts necessary to support the judgment, this court will remand the case for additional findings and conclusions. [Citation omitted.]" *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

Accordingly, we vacate Weber's rape sentence and remand the rape conviction to the district court to make all factual and legal determinations necessary to decide whether Weber is an aggravated habitual sex offender pursuant to the enhanced sentencing provisions of K.S.A. 2009 Supp. 21-4642. The district court must then proceed to resentence Weber accordingly.

ALTERNATIVE MEANS

Weber separately challenges his rape conviction, claiming that the evidence was insufficient to support all of the alternative means of committing rape upon which the district court instructed the jury, *i.e.*, "penetration of [M.E.W.'s] female sex organ by [1] a finger, [2] the male sex organ or [3] any object." Weber argues that because the State failed to present any evidence that Weber penetrated M.E.W. with either his penis or "any object," it failed to present sufficient evidence on *each* of the instructed alternative means. See *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010) (there must be sufficient evidence to support each means upon which jury is instructed).

*Standard of Review*

This issue will be determined by considering whether the statutory crime of rape creates alternative means of committing the offense. That determination involves questions of law reviewable de novo on appeal. See *State v. Britt*, 295 Kan. 1018, Syl. ¶ 1, 287 P.3d 905 (2012).

*Analysis*

The crime of rape is set forth at K.S.A. 21-3502 and provides, in relevant part, that rape is "[s]exual intercourse with a person who does not consent to the sexual intercourse." K.S.A. 21-3502(a)(1). In conjunction, "sexual intercourse" is defined in K.S.A. 21-3501(1), as meaning "any penetration of the female sex organ by a finger, the male sex organ or any object." Weber contends that the legislature provided alternative means of engaging in sexual intercourse, depending on the object or body part used to make penetration, and, in turn, there are the same alternative means of committing rape.

In *Britt*, we addressed and rejected the same argument, holding:

"The *actus reus* of the sexual intercourse reference in the rape statute is 'penetration.' The alternative methods of penetrating the female sex organ set forth in the statute—by a finger, the male sex organ, . . . or an object—merely describe 'the factual circumstances in which a material element may be proven,' *i.e.*, the different ways in which penetration may occur. [Citation omitted.] Thus, these are not alternative means, but options within a means and the inclusion of this language in the jury instructions does not make this an alternative means case triggering concerns of jury unanimity." 295 Kan. at 1027.

Weber does not persuade us to revisit our resolution of the issue in *Britt*. Rape is not an alternative means crime. Therefore, evidence that Weber penetrated M.E.W. with his fingers was sufficient to support the crime of rape as instructed; proof of penetration with another object or body part was unnecessary. The rape conviction is upheld.

OVERBROAD JURY INSTRUCTION

Weber also complains that the jury instruction on the attempted rape charge was broader than the charging document in describing the overt act he committed. See *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009) (jury instruction stating "the elements of a crime that is broader than the complaint charging the crime is erroneous"). But we have reversed the attempted rape conviction as multiplicitous, thus rendering this issue moot.

CONSTITUTIONALITY OF K.S.A. 2009 SUPP. 21-4642

Finally, Weber challenges his enhanced sentence by claiming

that K.S.A. 2009 Supp. 21-4642 is unconstitutional because it increases a sentence based on facts not proven to a jury. This court has repeatedly rejected arguments of this nature. *Trautloff*, 289 Kan. at 803-04; *State v. Conley*, 287 Kan. 696, 700-01, 197 P.3d 837 (2008); *State v. Warledo*, 286 Kan. 927, 954, 190 P.3d 937 (2008); *State v. Johnson*, 284 Kan. 18, 23, 159 P.3d 161 (2007).

Weber asserts no new grounds for us to reconsider our firmly established law in this area, and we therefore find no constitutional violation.

Affirmed in part, reversed in part, and remanded with directions to the district court.