NOT DESIGNATED FOR PUBLICATION

No. 117,601

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RENEE SHAREE GRANGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed October 19, 2018. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL, J., and STUTZMAN, S.J.

PER CURIAM: Because of a staffing shortage in December 2015, Defendant Renee Sharee Granger was called in to cover a Saturday night shift at a Johnson County assisted living facility. Granger, a certified nurse assistant, was assigned to an area she did not typically work that included patients with dementia like Mary McEnroe. McEnroe kept a debit card in a small purse among her belongings in a cabinet in her room. Various family members used the debit card when they took her out to eat or bought necessaries for her.

1

The debit card turned up missing. Someone purchased almost $700 in merchandise with the card at a Walmart in Raytown, Missouri, about an hour after Granger's shift ended. A security video from the store for that night showed a woman generally fitting Granger's description and wearing a distinctive tasseled stocking cap checking out at one of the registers. A manager at the care facility recalled that as he left that evening he saw Granger coming in and took particular note of her unusual hat—a stocking cap that matched the one in the security video. He and another employee from the care facility said they believed the person in the video to be Granger.

The Johnson County District Attorney's office charged Granger with five crimes:

• One count of identity theft, a felony violation of K.S.A. 2015 Supp. 21-6107(a)(1), for possessing the debit card with the intent to defraud McEnroe;

• One count of identity theft, a felony violation of K.S.A. 2015 Supp. 21-6107(a)(1), for using the debit card with the intent to defraud Walmart;

• One count of misdemeanor theft in violation of K.S.A. 2015 Supp. 21-5801(a)(1) for taking the debit card with the intent to permanently deprive McEnroe of it;

• One count of criminal use of a financial card, a misdemeanor violation of K.S.A. 2015 Supp. 21-5828(a)(1); and

• One count of mistreatment of a dependent adult, a misdemeanor violation of K.S.A. 2015 Supp. 21-5417(a)(2).

A jury sitting in Johnson County District Court convicted Granger of all five charges during a trial in late 2016. At trial, Granger's lawyer emphasized that many employees of the care facility had access to McEnroe's cabinet and the debit card and relied on

2

Granger's earlier statement to a detective that she had not taken the card and was not the person in the Walmart security video. Granger did not testify at trial.

The district court later sentenced Granger to consecutive prison terms of 12 months and 8 months for each of the felony identify theft charges, concurrent jail terms for the 3 misdemeanors, and postrelease supervision for 12 months. The district court granted Granger probation for 18 months on the condition she serve 60 days in jail and ordered she pay restitution equivalent to the value of the merchandise to the financial institution that issued the debit card. Granger has appealed.

LEGAL ANALYSIS

On appeal, Granger launches twin attacks on her convictions for identity theft, arguing they are multiplicitous and criminal use of a financial card is the more specific crime applicable to her conduct in purchasing merchandise at the Walmart. As we explain, we find those points well-taken and reverse the conviction based on use of the card. Granger functionally leaves unchallenged the identity theft conviction for possessing the card, given the jury's rejection of her defense that she didn't take and use it.

Granger also contends her conviction for mistreatment of a dependent adult must be set aside because the evidence failed to show McEnroe gave the debit card to her in response to threats, entreaties, or some other pressure. We find that contention mistaken and affirm the conviction. Granger has not disputed her conviction for theft of the debit card.

The points on appeal turn on settled legal principles applied to the language of the relevant statutes. They are questions of law we review without deference to the district court. *State v. Turner*, 293 Kan. 1085, 1086, 272 P.3d 19 (2012) (interpretation of statute

3

presents question of law); *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009) ("Interpretation of a statute is a question of law over which [an appellate] court has unlimited review.").

*Conviction for Mistreatment of Dependent Adult*

We first consider what constitutes mistreatment of a dependent adult. As we have indicated, Granger argues the crime requires the victim to have given or turned over property or something else of value to the defendant. So Granger says simply taking property belonging to the victim is insufficient. Under that theory, removing the debit card from the cabinet without McEnroe's knowledge and then going on an unauthorized spending spree with it would not be mistreatment of the kind criminalized in K.S.A. 2017 Supp. 21-5417.

When the events happened in 2015, K.S.A. 21-5417(a)(2)(A) criminalized knowingly "*taking the personal property . . . of a dependent adult* for the benefit of the defendant . . . by taking control, title, use or management of the personal property . . . through . . . [u]ndue influence, coercion, harassment, duress, deception, false representation, false pretense or *without adequate consideration* to such dependent adult." (Emphases added.) Parsing the statutory language, criminal mistreatment of an adult includes taking that person's property for the defendant's benefit without adequate consideration or compensation to that person. If Granger filched the debit card from the cabinet and didn't pay McEnroe for the card or the merchandise she purchased with the card, that misconduct satisfied the statutory elements of the crime.

The Legislature substantially rewrote K.S.A. 21-5417 in 2014 to expand the conduct criminalized as mistreatment of a dependent adult. Among the changes, the Legislature added the phrase "without adequate consideration," thereby extending unlawful takings from those accomplished with coercion or other forms of undue

4

influence or false representations directed at the victim to those using stealth to secure property without the victim's involvement at all. Although Granger's argument might have had some force under the pre-2014 version of K.S.A. 21-5417, it has been undone by those statutory changes. See *State v. Anderson*, No. 103,484, 2011 WL 4563072, at *2-3 (Kan. App. 2011) (unpublished opinion) (applying pre-2014 version of statute). The jury properly convicted Granger of mistreatment of a dependent adult.

*Convictions for Identity Theft*

Granger fares considerably better with her arguments on her convictions for identity theft. In K.S.A. 2017 Supp. 21-6107, the Legislature expansively defined the crime of identity theft. Pertinent here, K.S.A. 2017 Supp. 21-6107(a)(1) criminalizes as identity theft "obtaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to . . . [d]efraud that person, or anyone else, in order to receive any benefit." The statute contains a similarly sweeping definition of "personal identifying information" that includes a debit or credit card number. K.S.A. 2017 Supp. 21-6107(e)(2)(M).

First, Granger contends her separate convictions for possession of the debit card and for use of the debit card are impermissibly multiplicitous, meaning the State has charged one criminal act as two or more distinct crimes. Multiplicitous charges expose a defendant to pyramiding punishments for what is actually one criminal wrong. That violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. See *State v. Pribble*, 304 Kan. 824, 826, 375 P.3d 966 (2016).

To analyze a multiplicity challenge, an appellate court first determines whether the convictions arise from the same or unitary conduct. A four-factor test guides that inquiry

and considers: (1) whether the actions the State has charged as multiple crimes occurred at or near the same time; (2) whether the actions occurred in the same place; (3) whether the actions are causally linked or related; and (4) whether "a fresh impulse" motivated some of the actions. *State v. Weber*, 297 Kan. 805, 809, 304 P.3d 1262 (2013) (citing *State v. Schoonover*, 281 Kan. 453, 497, 133 P.3d 48 [2006]). If the convictions arise from the same conduct and have been charged as violations of the same statute, the court must then determine the unit of prosecution reflected in the statute. The determination depends on how the Legislature has defined the proscribed conduct. Each discrete wrongful act represents a unit of prosecution, and each unit supports a separate criminal charge. *Schoonover*, 281 Kan. at 497-98; *State v. Umphenour*, No. 116,577, 2018 WL 2271419, at *5 (Kan. App. 2018) (unpublished opinion).

Here, the trial evidence the jury must have accepted to convict Granger established she took McEnroe's debit card sometime between 6 p.m. and 10 p.m. while she was at work and used it at the Walmart a little more than an hour after she left work. Granger's possession of the debit card overlapped with her use of it—Granger could not have used it without possessing it. So possession was a necessary condition for use. The abbreviated time period and the causal connection between possession and use show a single, unbroken criminal impulse. Granger's violation of the identity theft statute entails unitary conduct.

We, therefore, turn to the unit-of-prosecution analysis. The identity theft statute does not explicitly establish units of prosecution and simply criminalizes various acts involving personal identifying information. By contrast, for example, Washington has statutorily defined units of prosecution for its identity theft crimes. See Wash. Rev. Code § 9.35.001(1) (2016). Many acts criminalized in K.S.A. 2017 Supp. 21-6107(a) overlap, such as "obtaining" and "purchasing" that information. We think it unlikely a purchase of protected information properly could be charged both as purchasing and obtaining, let alone as a third violation for the immediately resulting possession. And, as we have said,

6

possession is integral to use. The statute, therefore, is at the very least ambiguous as to units of prosecution in some circumstances.

The Kansas appellate courts have applied the rule of lenity to the defendant's benefit when resolving ambiguities in establishing appropriate units of prosecution. *State v. Thompson*, 287 Kan. 238, 249, 200 P.3d 22 (2009); *Umphenour*, 2018 WL 2271419, at *5. Those principles tilt in favor of Granger and require we reverse her conviction for identity theft based on her use of the debit card at Walmart. Given the evidence, those two convictions are multiplicitous. One or the other must be reversed. As we discuss momentarily, Granger's conviction for identity theft based on using the debit card must be reversed for another reason, as well. That reversal also cures the multiplicity problem. So Granger's conviction for identity theft for possessing the debit card remains valid.[*]

[*] We presume without deciding that in other circumstances, a defendant properly could be charged and convicted of both possessing and using personal identifying information under K.S.A. 2017 Supp. 21-6107. For example, a defendant who wrongfully obtained another person's credit card number and only intermittently used the number to purchase items arguably ought to be guilty of both possession and use of the information. Sporadic use of the number would not seem to be unitary with the protracted possession of it. Depending on how the defendant used the number, the cardholder might be unaware of the wrongful appropriation of the number for some time. Here, of course, the evidence did not reveal Granger kept the debit card for long after she used it at Walmart.

For her second line of attack, Granger contends criminal use of a financial card is a more specific crime than identity theft and, on these facts, that conviction supplants the conviction for identity theft based on use of the debit card as the more general crime. The argument advances a legally sufficient ground to reverse the identity theft conviction.

The Kansas Supreme Court has stated the rule on general and specific crimes this way: "'When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling.'" *State*

7

*v. Williams*, 250 Kan. 730, 736, 829 P.2d 892 (1992) (quoting *State v. Wilcox*, 245 Kan. 76, Syl. ¶ 1, 775 P.2d 177 [1989]). The rule has since been codified in K.S.A. 2017 Supp. 21-5109(d) to prohibit convicting a defendant of a crime based on "a designated kind of conduct generally," when another crime applies to "a specific instance of such conduct." In that circumstance, the defendant may be convicted of and punished only for the more specific crime. K.S.A. 2017 Supp. 21-5109(d)(1) and (2).

As defined in K.S.A. 2017 Supp. 21-5828(a), criminal use of a financial card entails "[u]sing a financial card without the consent of the cardholder;" using a "revoked or canceled" financial card; or using "a falsified, mutilated, altered or nonexistent financial card" with the "intent to defraud" by acquiring "money, goods, property or services." Granger was charged with use of the debit card without McEnroe's consent. The elements of criminal use of a financial card, particularly as charged here, match elements of identity theft. But the identity theft statute covers far more wrongful conduct than does the financial card statute. For example, identity theft applies to all kinds of personal information, not just financial cards. See K.S.A. 2017 Supp. 21-6107(e)(2) (outlining 14 types of covered "personal identifying information"). Similarly, defendants may be guilty of identity theft by engaging in a wide range of activities related to personal identifying information, including but not limited to its use. A person buying or selling social security numbers or driver's license numbers would be guilty of identity theft but not criminal use of a financial card.

In short, using a debit card as Granger did constitutes criminal use of a financial card that is also "a specific instance" of more generally defined conduct criminalized as identity theft. Under K.S.A. 2017 Supp. 21-5109(d), Granger could have been convicted only of criminal use of a financial card and not use of personal identifying information as a form of identity theft for her unlawful purchases at Walmart. We, therefore, must reverse Granger's conviction for identity theft based on her use of the debit card. Her conviction for possession of the debit card is unaffected.

8

*Conclusion*

We reverse Granger's conviction for identity theft based on the use of the debit card at Walmart, vacate her sentence for that conviction, and remand to the district court for further proceedings consistent with this opinion, including whether the restitution award to the financial institution issuing the debit card remains appropriate.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.