NOT DESIGNATED FOR PUBLICATION

No. 127,145

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JEREMY S. BROWN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Submitted without oral argument. Opinion filed January 16, 2026. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and CLINE, JJ.

PER CURIAM: Jeremy Brown was convicted of four counts of rape and was sentenced to four 120-month prison terms, to be served concurrently. He now appeals, arguing for various factual and legal reasons that only one of these convictions should stand. After carefully reviewing the record before us and the parties' arguments, we agree. Two of the four convictions were charged in the alternative and merge (that is, cannot stand as individual convictions) under the holding in *State v. Vargas*, 313 Kan. 866, 875, 492 P.3d 412 (2021). And the remaining two convictions are multiplicitous, in that they

1

are based on a unitary course of conduct. We thus reverse three of Brown's convictions and remand with directions to amend the journal entry to reflect one rape conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2021, a woman we call "Susan" went to a karaoke bar with her Son and Son's Girlfriend. Susan was 72 years old at the time. At the bar, the group met Brown. Brown and Susan talked and drank alcohol until the bar closed. The group and Brown left the bar at 2 a.m.

The group invited Brown to join them at a house Susan shared with Son to continue the party. At the house, everyone continued to drink alcohol and converse. According to Brown, Susan offered to let him spend the night at the house, but he declined. Around 4 a.m., Son and Girlfriend went to bed. Girlfriend thought Susan was "pretty intoxicated." But Brown remembered that Susan "wasn't drunk" but rather was just "tipsy" and "having a good time." Before going to bed, Son saw Susan sleeping in her recliner in the corner of the living room.

According to Brown, after the others went to bed, he and Susan stayed up in the kitchen talking and drinking. In the kitchen, Brown said that they kissed and held each other. They then made their way to the couch in the living room. On the couch, the two continued kissing, and Brown rubbed Susan's arm and massaged her breasts before "briefly" rubbing her vagina. Brown later told detectives that he "slightly" penetrated her vagina with his fingers before "moving onto sex." Brown stated that before beginning sex, "I just asked her if I was making her feel good, she was saying yes" and that "she hasn't gotten to do a lot of this stuff in a long time." Brown then laid Susan on the couch because she was "a little tipsy"; and while sitting on the edge of the couch, she attempted to reposition herself and almost fell off the edge. After laying Susan on the couch, Brown penetrated her with his penis.

2

Brown told detectives that Susan was coherent and conversant during their time together. He stated that they both wanted to have sex—that at no point during their sexual encounter did Susan say "no" or "stop." Brown also said that he and Susan never had a conversation about having sex together.

Son and Girlfriend provided a different description of the events. According to them, they heard a noise from the living room soon after they went to bed and then a second noise that Girlfriend described as a "painful-type moan," as though Susan had fallen. Son entered the living room first, followed by Girlfriend. Girlfriend and Son saw that Susan was lying on her back on the ground in front of the couch. They said Susan was naked from the waist down and appeared to be unconscious. Son and Girlfriend testified that Brown was on his knees between Susan's legs with his pants pulled down to his knees having sex with Susan.

Son attacked Brown, kicking him in the head. Brown told detectives that when Son attacked him, Susan was on the couch and Brown was getting off the couch. Brown stated that he was trying to stand up to reposition himself on the couch when Son attacked him. During the fight, Son cut Brown with a knife.

While the fight was ongoing, Girlfriend attempted to help Susan up onto the couch but was only successful in leaning her up against the couch. Girlfriend helped Susan put her underwear back on because Susan could not do it herself. Girlfriend and Son testified that Susan did not appear to be conscious and was barely able to control her body.

The fight between Brown and Son spilled outside the home, causing a neighbor to call the police. When police officers arrived, they found a bent knife and evidence of the skirmish in the yard and living room. Susan was unable to accurately communicate her birth date or her current address to the emergency responders.

Susan was taken to the hospital, where she awoke with no memory of the events after sitting in her recliner once the group had returned from the bar. Susan told police officers that she did not have any sexual contact with Brown.

Although Susan was admitted to the hospital at 5:30 a.m., the sexual assault nurse examiner could not perform her examination until 11 a.m. because Susan was too intoxicated to consent to the exam until that point; at the time of admission, Susan's blood alcohol level was 0.266. When she was examined, nurses found injuries to her legs and her vaginal and anal area—injuries Susan said that she did not have before. The exam also revealed the presence of semen in the vaginal and anal swabs, with Brown's DNA a potential match to the DNA found on Susan's anal swab. A toxicology report found evidence of cocaine, marijuana, and prescription drugs in Susan's system.

The morning after the incident, two detectives questioned Brown and took pictures of his injuries. Brown admitted that he had sex with Susan the previous night, but he said he believed the encounter was consensual.

Brown was charged with four counts of rape:

- Counts 1 and 2 alleged rape by digital penetration. These counts were charged in the alternative, with Count 1 alleging that Susan was incapable of giving consent due to her intoxication and Count 2 alleging that she was unconscious or physically powerless when the act occurred.

- Counts 3 and 4 alleged rape by penile penetration. Again, these counts were charged alternatively, with Count 3 alleging that Susan could not consent due to intoxication and Count 4 alleging that Susan had been unconscious or physically powerless when the penetration occurred.

The case against Brown went to trial, with all four charges presented to the jury. The jury found Brown guilty on all four counts. At sentencing, the State asked the court to impose sentences only on Counts 1 and 3 since two of the counts had been charged in the alternative. The district court ultimately sentenced Brown to 120-month prison terms for each of the four counts, to be served concurrently.

DISCUSSION

Brown raises three arguments on appeal, essentially arguing that Kansas law allows a conviction for only one count of rape on these facts—not four.

Brown first argues, consistent with the State's comments at sentencing, that the district court should not have found him guilty under the alternative charges of digital and penile penetration, as those charges legally merged into their alternative counts—leaving only Counts 1 and 3. See *Vargas*, 313 Kan. 866, Syl. ¶ 3 ("Where alternatively charged counts result in multiple guilty verdicts for alternative ways of committing one crime, the multiple verdicts merge into one conviction."). The State agrees that these convictions merged, and thus concedes that the case must be remanded to correct this error. We similarly agree that Counts 1 and 2, and Counts 3 and 4, alleged alternative ways of committing digital and penile penetration. The case must thus be remanded—at a minimum—for an amended journal entry showing two, not four, convictions.

Brown also argues that one of the two remaining merged convictions must also be dismissed. He offers two alternative reasons for this course: He argues that Count 1 and Count 3 are multiplicitous in that they arose from the same course of conduct, and so allowing both convictions to stand would violate the United States and Kansas Constitutions. And he asserts that the State failed to prove the corpus delicti of digital rape, as the only evidence of that offense came from Brown's statement to detectives—a

5

statement Brown now claims was uncorroborated and unreliable. After reviewing the record and the caselaw governing our analysis, we agree with Brown's first argument that Counts 1 and 3 and multiplicitous, and so only one conviction can stand. We therefore do not need to address Brown's alternative corpus-delicti claim.

Multiplicity is the charging of a single offense in several counts of a complaint. The primary concern with multiplicity is that it creates the potential for multiple punishments for the same conduct—a violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. *State v. Weber*, 297 Kan. 805, 808, 304 P.3d 1262 (2013). For the last two decades, Kansas courts have analyzed whether convictions are multiplicitous using the test articulated in *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). This test requires us to determine, first, "whether the convictions arose from the same conduct." *State v. Sprung*, 294 Kan. 300, 306, 277 P.3d 1100 (2012). We then must analyze "whether, by statutory definition, [the defendant's] conduct constitutes one offense or two." 294. Kan. at 306.

Brown acknowledges that he did not raise this multiplicity challenge before the district court. But Kansas appellate courts have often exercised our prudential discretion to reach multiplicity questions, as these questions require us to resolve legal questions of statutory interpretation over which we would already exercise unlimited review. See *Weber*, 297 Kan. at 809. And the Kansas Supreme Court has noted that meritorious multiplicity challenges may be considered for the first time on appeal "in order to serve the ends of justice and prevent a denial of fundamental rights." *State v. Nguyen*, 285 Kan. 418, 433-34, 172 P.3d 1165 (2007). Consistent with this precedent, we will consider Brown's argument.

As we have noted, the *Schoonover* test at its heart requires courts to ascertain "whether the convictions arose from the same or unitary conduct." *Weber*, 297 Kan. at

6

809. This analysis considers, among other things, whether "(1) the acts occurred at or near the same time, (2) the acts occurred at the same location, (3) a causal relationship existed between the acts, in particular whether an intervening event separated the acts, and (4) a fresh impulse motivated some of the conduct." *Sprung*, 294 Kan. at 307.

Brown argues that the acts giving rise to his convictions in Counts 1 and 3—brief penetration of Susan with his fingers immediately before having penile sex—was a unitary course of conduct of sexual relations. The State concedes that Brown's digital and penile penetration occurred at or near the same time and at the same location—Susan and Son's house. But the parties dispute whether there was any intervening act separating the conduct and whether a fresh impulse motivated some of Brown's conduct.

Brown correctly points out that the only direct evidence supporting the conviction based on digital penetration was his statement to the police where he discussed the sexual intercourse. During this statement, Brown described increasingly intimate interactions: Brown and Susan began by kissing; Brown rubbed Susan's arms and breasts; Brown rubbed Susan's vagina and allowed his fingers to penetrate her; and then Brown and Susan "literally just moved onto sex" on the couch. In Son's version of events, Brown had moved Susan to the floor before penile penetration.

The State argues that Brown's repositioning of Susan, from seated to lying (whether on the couch or on the floor), effectively intervenes between digital and vaginal penetration. But our caselaw does not support that distinction.

Most notably, this court considered a factually similar situation in *State v. Aguilera*, No. 103,575, 2011 WL 2555423 (Kan. App. 2011) (unpublished opinion), *rev. denied* 293 Kan. 1108 (2012). In that case, the defendant penetrated the victim's vagina with his penis, engaged in oral sex, and then reinserted his penis in her vagina, with the whole sexual encounter lasting a few minutes. A panel of our court rejected the State's

argument that the oral sex during the course of the penile sex was an intervening event, giving rise to two convictions of rape. Instead, the court found that "the two rape convictions arise from the same course of conduct" and "immediately follow[ed] one after the other." 2011 WL 2555423, at *7.

We reach a similar conclusion here. The evidence shows that Brown engaged in a continuous course of sexual conduct with Susan, following directly from one action to another, without any intervening event to create a new and discretely different sexual act. This is not a circumstance where a defendant left the room for a short period of time, even 30 to 90 seconds, and thus had an "opportunity to reconsider his felonious course of action." See *State v. Sellers*, 292 Kan. 346, 359-60, 253 P.3d 20 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Instead, the record demonstrates that Brown engaged in a unitary course of conduct.

We are similarly unconvinced by the State's argument that Brown's digital and penile penetrations are different criminal acts because they involve different motivations. The State speculates that digital penetration is often done to stimulate the victim, while penile penetration is aimed to stimulate the defendant. We do not find that the record supports these arguments. Nor are different motivations, standing alone, enough to demonstrate a "fresh impulse" resulting in a new crime. See *State v. Colston*, 290 Kan. 952, 964, 235 P.3d 1234 (2010), *overruled on other grounds by Dunn*, 304 Kan. 773. All of Brown's actions were in furtherance of his stated goal of having sexual intercourse with Susan and occurred as part of one continuous sexual encounter.

We thus turn to the second consideration under *Schoonover*—whether the statute defining rape treats Brown's actions as one crime or two. Relevant here, K.S.A. 21-5503(a)(2) criminalizes the act of "[k]nowingly engaging in sexual intercourse" with a person who is "incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was

8

reasonably apparent to the offender." In *Aguilera*, the court held that the previous version of this statute criminalized a course of sexual interactions that together comprised sexual intercourse, rather than each discrete sexual or penetrative act. 2011 WL 2555423, at *10-11. The State does not contest this conclusion here, but rather focuses its arguments on whether Brown's conduct was unitary.

Brown's convictions of both digital and penile rape are multiplicitous and violate the Double Jeopardy Clause of the United States and Kansas Constitutions. Brown engaged in one unitary course of conduct in his sexual interactions with Susan. He thus should have been convicted of one count—not multiple—of rape. We reverse one of his remaining, merged convictions, leaving one conviction of rape standing.

In reaching this conclusion, we—like the panel in *Aguilera*—acknowledge that the Kansas Supreme Court took a different approach to analyzing a course of sexual interactions and reached a different outcome in *State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990). But as the *Aguilera* court reasoned, *Zamora* was decided more than a decade before *Schoonover* using a different multiplicity framework that the Kansas Supreme Court has since discarded. The State does not urge us to follow *Zamora* here, likely because the court has now charted a different path requiring a different result. Accord *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022) (Court of Appeals is duty-bound to follow Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position.).

Because we find that Brown's convictions were multiplicitous, and Brown does not dispute the fact that he engaged in sexual intercourse with Susan, we do not need to reach Brown's corpus-delicti argument.

We affirm one of Brown's convictions, reverse his convictions on the remaining three rape charges and vacate those affected sentences, and remand with directions to

amend the journal entry to show this correction. Brown was sentenced to four concurrent 120-month prison sentences, so our conclusion in this case does not require resentencing.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.