NOT DESIGNATED FOR PUBLICATION

No. 119,354

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROGER BRYAN SCHMIDT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Mitchell District Court; KIM W. CUDNEY, judge. Opinion filed June 14, 2019.
Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Roger B. Schmidt faced presumptive prison sentences for two felonies. He persuaded the trial court to nevertheless grant him probation because of his postarrest but presentence success at a drug treatment program. On the same day the trial court granted Schmidt probation, he tested positive for methamphetamine and admitted to using methamphetamine four days before he was granted probation. The trial court revoked Schmidt's probation because it found that he had affirmatively misrepresented his sobriety in order to induce the court to grant him probation. On appeal, Schmidt contends that the trial court improperly revoked his probation for an admitted drug

1

misstep that occurred before the trial court granted him probation. We disagree. We conclude that the trial court revoked his probation for committing a fraud on the court in persuading the court to grant him probation. Accordingly, we affirm.

On May 15, 2017, Schmidt pleaded no contest to one count of unlawful possession of methamphetamine, a severity level 5 felony, and aggravated child endangerment, a severity level 9 felony. Because Schmidt had a criminal history score of B, he faced presumptive prison sentences for both offenses.

Before his sentencing hearing, Schmidt moved for a dispositional departure to probation. In the motion, Schmidt explained that he completed inpatient drug treatment before enrolling in a sober living community called the Omega Project, where he lived for the past year. He wrote:  "Since being in the program, the Defendant has consistently tested clean on court-ordered drug tests. He would happily test anywhere or anytime to show that he has maintained his sobriety."

He also wrote that:

>    "If the Defendant is granted probation, he will continue in the Omega Project. The Defendant did not sink into addiction overnight and he knows that addiction is not something that is magically cured. He knows that he must work daily at staying sober and making choices. The Omega Project has been the best thing in his life to help him make those changes. He wants to be part of his son's life. He wants to help others gain and maintain a sober life."

At the August 9, 2017 sentencing hearing, Schmidt testified and called several character witnesses to testify in support of his departure motion as well.

Schmidt testified that at the Omega Project, there are "strict rules regarding abstinence from drugs and alcohol," there is "no using," and participants are "held very

2

accountable towards everything we do." Schmidt's attorney asked, "What makes today different when you tell the Court, um, I'm—I'm done with drugs and I will not use substances again?" Schmidt responded that "it's been such a long hard road. With the drug[s] and everything. I don't know, I—I was tired of it before I was arrested. I was begging God to get me out of it. And he answered my prayers." He stated that he wanted to spend at least another year in the Omega Project "just to solidify what I started." Finally, Schmidt told the trial court judge that she "will not regret it" if she granted his dispositional departure to probation.

The director of the Omega Project testified that Schmidt had been successful at the Omega Project. He testified that "success" in the program included not using drugs as well as a "full lifestyle change." He stated that Schmidt had been in the program for over a year and that the Omega Project has an 80 to 90% success rate for participants who have been in the program for a year or longer. He further stated that he was "not aware of any issues" Schmidt had in the program and that Schmidt had done well. Finally, an Omega Project house leader testified. He testified that Schmidt had no issues in the program, including no relapses that he was aware of.

During argument, Schmidt's attorney, Julie Effenbeck, stated that "he's had more than a year now—way more than a year of sobriety and of making changes that I think are—are true changes for him to make." The attorney asked the court "to give him a chance at this. Um, if he screws up, he certainly can go to prison on a motion to revoke." She further argued that "I do believe that Roger has—has made a change that I think is going to be an everlast—an everlasting change."

The State opposed a dispositional departure.

The trial court sentenced Schmidt to 34 months for possession of methamphetamine and 7 months for aggravated child endangerment. Nevertheless, the

3

trial court judge granted Schmidt a dispositional departure to 12 months of probation. The judge noted that Schmidt had tried and failed at drug treatment before, but she stated that "this time it appears that you have made changes for the right reasons."

On August 9, 2017, the same day as the sentencing hearing, the State moved to revoke Schmidt's probation. The State alleged that Schmidt submitted to a urinalysis (UA) on August 9, 2017, which tested positive for methamphetamine. Schmidt signed an admission of usage stating he had used meth on August 5, 2017, four days before the sentencing hearing.

The trial court held a probation revocation hearing on September 6, 2017. Schmidt's attorney argued that the State could not revoke Schmidt's probation for drug use because the drug use happened on August 5, 2017, before Schmidt was placed on probation on August 9, 2017. Schmidt's attorney asked that the trial court allow Schmidt to stay on probation and consider the 30 days he served in jail between the State's motion to revoke and the probation hearing as the appropriate sanction.

The State responded that even though Schmidt was not on probation when he used methamphetamine, he was out on bond and a condition of his bond was abstinence from drugs. The State argued that the trial court should revoke Schmidt's probation because it was induced to grant the dispositional departure because Schmidt falsely claimed that he was clean. The trial court found that Schmidt had been "untruthful on purpose" to get a dispositional departure. As a result, the trial court revoked Schmidt's probation.

*Did the Trial Court Err by Revoking Schmidt's Probation?*

Schmidt argues that this court must reverse the trial court's ruling to revoke his probation because the trial court effectively punished him for conduct that predated his probation. The State argues that the trial court was correct to revoke Schmidt's probation

4

because Schmidt had lied about being clean and that the trial court had relied on this misrepresentation when granting him probation.

*Standard of Review*

"Two standards of review are applicable to probation revocation cases. In determining whether a sanction was authorized by statute, we exercise de novo review, because statutory interpretation is a question of law. See *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002). If revocation is an allowable disposition under the statute, the decision whether to revoke is within the discretion of the district court and we will reverse only if the court abused that discretion. *Rocha*, 30 Kan. App. 2d at 819. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of fact; or (3) it is based on an error of law. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015)." *State v. Patton*, No. 117,115, 2018 WL 1247192, at *2 (Kan. App. 2018) (unpublished opinion), *rev. denied* 308 Kan. 1599 (2018).

Further, when this court must review the trial court's findings of fact, it reviews them for substantial competent evidence. *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013). Substantial competent evidence is relevant and legal evidence that a reasonable person could consider adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012).

Schmidt argues that this case is like *State v. Gary*, 282 Kan. 232, 144 P.3d 634 (2006). There, Gary committed a new crime between his conviction and sentencing. When the State later charged Gary with that crime, the State also moved to revoke his probation in the first case. Our Supreme Court held that "Gary's conduct prior to sentencing did not constitute a violation of the terms of his probation and therefore cannot be the basis for revoking that probation under Kansas law." 282 Kan. at 241. Gary was not yet on probation when he committed the second crime and, thus, could not have violated the terms of his probation at that time.

5

Nevertheless, the *Gary* court recognized that a trial court may revoke a defendant's probation without evidence of a probation violation if the trial court finds that the defendant made affirmative misrepresentations to the court to induce the court to grant him or her probation. 282 Kan. at 242. On this issue, the *Gary* court cited a previous Kansas Supreme Court decision, *Swope v. Musser*, 223 Kan. 133, 573 P.2d 587 (1977), which referred to a situation like this as a "revocation" of a defendant's probation although it did not fall under K.S.A. 22-3716. The *Swope* court explained:

> "'[W]hen misrepresentations have been made to the court by or on behalf of a defendant at the time of granting probation which misrepresentations were a basis for granting probation in the first place, the prior misrepresentations may be grounds for revocation. [Citation omitted.] It has also been held that probation may be revoked for fraudulent concealment of facts and circumstances existing at the time of the hearing at which probation is granted.' [Citation omitted.] 223 Kan. at 136." *Gary*, 282 Kan. at 242.

Since the *Gary* decision, this court has issued two unpublished opinions addressing the issue of probation revocation based on a defendant's affirmative misrepresentation at sentencing. The first was *State v. McCartney*, No. 95,591, 2007 WL 1309606 (Kan. App. 2007) (unpublished opinion). There, McCartney requested that the sentencing court grant him probation on his drug convictions because "'[t]he one trip of me going to Coffeeville [*sic*] and using drugs cost me about everything, cost me my job, my sobriety, and almost my family.'" 2007 WL 1309606, at *1. McCartney "represented his offense as isolated and that he sincerely sought redemption." 2007 WL 1309606, at *1. The court sentenced McCartney to probation.

Several months later, McCartney violated his probation; he was held in the county jail until a residential drug treatment program spot was available. While in jail, McCartney wrote a letter to his fiancée's ex-husband providing "detailed instructions, including a diagram, for making methamphetamine" and stating that once he was back

6

out of jail, he would help the recipient make methamphetamine. 2007 WL 1309606, at *1. The State did not discover this letter until after the trial court reinstated McCartney's probation on September 30, 2005. After the State discovered the letter, the trial court revoked McCartney's probation. The trial court stated that it believed McCartney had lied at the probation violation hearing "regarding the underlying crime being an isolated event." 2007 WL 1309606, at *3.

On appeal, this court affirmed the trial court's revocation of McCartney's probation. This court held that McCartney affirmatively misrepresented himself at the probation violation hearing when he "represented to the district court that the drug use which led to revocation of his probation on September 30 was a one-time event." 2007 WL 1309606, at *4.

Later, in 2012, this court decided *State v. Lucas*, No. 105,654, 2012 WL 1970067 (Kan. App. 2012) (unpublished opinion). There, Lucas pleaded guilty to eight counts of forgery. He moved for a dispositional departure to probation, arguing, among other things, that he was "employed full-time by Sough Central Steel Erectors" and the employer supported his request for probation. Lucas included a letter from the employer with his motion. The trial court granted Lucas probation. 2012 WL 1970067, at *1.

Two months later, the State moved to revoke Lucas' probation. The State alleged that Lucas had lied about his employment. At the probation revocation hearing, the State produced evidence that no company called "South Central Steel Erectors" was registered in Kansas. Further, the State had the owner of a company named "South Central Erectors" testify; he testified that the company never employed Lucas. Further, the owner testified that the man who signed Lucas' letter had previously worked for the company, but he was not authorized to write this letter on behalf of the company. The trial court found that Lucas had affirmatively misrepresented his employment status and that he did

so in order to persuade the court to grant him probation. Accordingly, the trial court revoked Lucas' probation.

On appeal, this court affirmed the trial court's revocation of Lucas' probation. This court determined that "sufficient evidence from which a reasonable person could conclude that the district court relied on Lucas' misrepresentation about current employment in deciding to grant probation." 2012 WL 1970067, at *3.

Here, the State argues that Schmidt affirmatively misrepresented to the court that he was no longer using drugs to secure a dispositional departure. On the other hand, Schmidt contends that he "did not make any affirmative misrepresentations that would allow the district court to revoke his probation."

Schmidt's representations to the trial court, however, taken together, amount to an affirmative representation that he had refrained from drug use while at the Omega Project. First, in his departure motion, he wrote: "Since being in the program, the Defendant has consistently tested clean on court-ordered drug tests. He would happily test anywhere or anytime to show that he has maintained his sobriety."

Then, at the revocation hearing, Schmidt's attorney asked, "What makes today different when you tell the Court, um, I'm—I'm done with drugs and I will not use substances again?" Schmidt responded that "It's been such a long hard road. With the drug and everything. I don't know, I—I was tired of it before I was arrested. I was begging God to get me out of it. And he answered my prayers." The trial court could and apparently did understand this to mean that Schmidt was "done with drugs" and would not use substances again, since Schmidt stated that he begged God to get him out of it, and God "answered [his] prayers."

8

Finally, during argument, Schmidt's attorney stated that Schmidt "had more than a year now—way more than a year of sobriety and of making changes that I think are—are true changes for him to make." This statement expressly represented that Schmidt was sober and had been sober for more than a year.

The trial court relied on these false misrepresentations of sobriety to grant Schmidt a dispositional departure. The judge pointed out that Schmidt had tried and failed at drug treatment before, but she stated that "this time it appears that you have made changes for the right reasons." In deciding to grant Schmidt probation, the trial court relied at least in part on Schmidt's misrepresentation that he had "made changes." Thus, sufficient evidence exists to support the trial court's factual determination that Schmidt affirmatively misrepresented his sobriety in order to induce the court to grant him probation.

Finally, we must consider whether the trial court judge improperly revoked Schmidt's probation for his drug use occurring on August 5, 2017, four days before he was granted probation on August 9, 2017, or whether the trial judge revoked his probation for fraudulently misrepresenting his sobriety or lack of drug use for the 18 months leading up to the sentencing hearing on August 9, 2017, as a means of persuading the trial court to grant his probation request.

At the revocation hearing on September 6, 2017, the trial court judge stated the following:

> "The real issue here today is what we do, whether you are allowed to continue on probation or whether the underlying sentence of 41 months with Department of Corrections should be imposed.
> "Last month we had a long hearing. You told this Court and you presented witnesses to testify on your behalf, how well the Omega Program had worked for you.

9

"That you had worked that program for 18 months and remained clean. And I guess you were fearful of going to prison that day at sentencing and that's why you used four days before.

"I can only believe that your testimony before this Court was untruthful on purpose, that it was to avoid prison and that this was not a simple act or relapse after you began probation."

Here, the trial court judge explicitly acknowledged that Schmidt's admitted drug usage occurred four days before his probation began on August 9, 2017. Indeed, the trial court judge specifically noted that Schmidt's admitted drug usage of methamphetamine "was not a simple act of relapse after [he] began probation." Significantly, the trial court judge observed: "And I guess you were fearful of going to prison that day at sentencing and that's why you used four days before." Then the trial court observed: "I can only believe that your testimony before this Court was untruthful on purpose, that it was to avoid prison . . . ."

Although the trial court stated that there was a preponderance of evidence that Schmidt violated the conditions of his probation granted on August 9, 2017, we determine that the trial court judge concluded that she was revoking Schmidt's probation because he had lied and deceived the court about his nondrug usage to persuade the court to grant his probation request.

Schmidt did not object to the trial court's findings below. "When no objection is made to the adequacy of the district court's findings, we can presume the district court found all facts necessary to support its judgment. Supreme Court Rule 165(b) (2014 Kan. Ct. R. Annot. 272); *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006)." *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Accordingly, we affirm.

Affirmed.

10

ATCHESON, J., dissenting: The majority materially mischaracterizes the factual basis the Mitchell County District Court relied on in revoking Roger B. Schmidt's probation. Contrary to the majority's description, the district court revoked the probation ostensibly because Schmidt violated the terms of that probation, triggering statutory sanctions including revocation under K.S.A. 2017 Supp. 22-3716. But, as I explain, the facts don't support statutory revocation. The district court *could have* rescinded the grant of probation for Schmidt's fraudulent misrepresentations—the rationale the majority erroneously ascribes to the ruling. As the record establishes, however, that's not what the district court did.

I, therefore, respectfully dissent. Because the process part of due process matters, I would reverse and remand. If the district court wants to take back the probation because of Schmidt's deceptive representations during the sentencing hearing, it has that authority and, with fair notice, may exercise its authority.

To distill the circumstances, Schmidt had a bad criminal record that appeared to revolve around his persistent use of illegal drugs. At his sentencing on August 9, 2017, for yet another drug conviction and a related offense, Schmidt testified and presented other evidence that he had joined a small residential program providing long-term assistance to recovering addicts. The evidence, including testimony from program counselors, focused on Schmidt's successful participation in the program for an extended period and, thus, fostered the unmistakable impression that he had been drug free. His lawyer said as much in arguing to the district court for probation rather than incarceration. The district court was swayed by that presentation and granted Schmidt a dispositional departure to probation over the State's objection. Among the conditions of probation the district court imposed, Schmidt had to submit to drug testing as his probation officer directed and he could not use illegal drugs.

11

Immediately after the sentencing, Schmidt reported to his probation officer. The probation officer ordered him to take a drug test. In conformity with the conditions of his probation, he complied. Schmidt tested positive for methamphetamine. He told his probation officer that he had used methamphetamine four days earlier on August 5 in anticipation of the district court sending him to prison at the sentencing hearing. He signed a statement admitting to his drug use.

The county attorney filed a motion to revoke Schmidt's probation because he "violated the terms of the probation as set forth in the Case Report" of the probation officer. The case report was incorporated by reference in the motion and attached as an exhibit. The report recites that Schmidt tested positive for methamphetamine on August 9 and admitted using on August 5.

The district court held a revocation hearing on September 6, 2017. The county attorney argued: (1) Schmidt violated the terms of his probation; (2) the probation should be revoked as a consequence; and (3) he should serve his underlying sentence. The county attorney suggested the circumstances were particularly appalling given Schmidt's pitch for probation at the sentencing hearing and his undisclosed use of illegal drugs just days earlier.

The probation officer testified to the test results and Schmidt's statement about his earlier use. Schmidt did not challenge those facts, and he did not testify or offer any other evidence.

Schmidt's lawyer argued that Schmidt had not violated the terms of his probation. He complied with the probation officer's request that he submit to a drug test. The lawyer pointed out that the drug use disclosed in the testing occurred before Schmidt was placed on probation and, therefore, could not be a violation of a probation that had not yet been

granted. As the majority acknowledges, Kansas caselaw supports that argument. See *State v. Gary*, 282 Kan. 232, 240, 144 P.3d 634 (2006). Schmidt's lawyer alternatively argued for an intermediate sanction short of revocation, as permitted for a statutory probation violation under K.S.A. 2017 Supp. 22-3716(c).

The district court addressed Schmidt and began its bench ruling this way: "[B]ased upon the testimony presented, the Court finds that there is a preponderance of the evidence that you did violate the conditions of probation in that probation was granted to you August 9." The district court then explained the factual basis for the ostensible violation and told Schmidt, "[O]n that day, you tested positive for methamphetamine and also . . . admitted usage of methamphetamine."

Having found what it construed to be a probation violation, the district court considered what to do with Schmidt—the proper disposition in light of the violation. At that point, the district court discussed Schmidt's criminal history and his misleading representations at sentencing in weighing how to punish the probation violation. Although the district court did not speak at length, the remarks suggest dismay at Schmidt's conduct both before and during sentencing. The district court gave no overt consideration to any lesser statutory sanction and ordered Schmidt to serve the underlying prison term.

The district court used the standard form journal entry for probation revocations to memorialize the result of the hearing. On the form, the district court checked boxes to show that a violation had been determined, probation revoked, and the original sentence imposed. In a space on the form for a description of the violation, the district court stated: "Defendant was drug tested and tested positive for methamphetamine and admitted to using methamphetamine."

The record shows the district court, the county attorney, and Schmidt's lawyer all treated this as a statutory probation revocation under K.S.A. 2017 Supp. 22-3716. That is, Schmidt did something that violated the conditions of his probation, thereby subjecting him to sanctions or revocation as provided in K.S.A. 2017 Supp. 22-3716(c). None of the principals, most particularly the district court, even hinted the action might be grounded in the common-law judicial authority to rescind probation based on fraud. So I am mystified by the erroneous factual premises the majority describes as the predicate for its decision to affirm the district court.

In *Gary*, the Kansas Supreme Court recognized that when a district court materially relies on a defendant's affirmative misrepresentations during sentencing to grant probation and later learns of the deception, it may rescind the probation "upon notice and hearing." 282 Kan. at 249. The *Gary* court cited *Swope v. Musser*, 223 Kan. 133, 136, 573 P.2d 587 (1977), and several other cases as authority. In *Musser*, the court acknowledged the proposition. In *Gary* and *Musser*, the court declined to apply the rule because neither defendant made false representations. But there is nothing equivocal about the court's endorsement of the rule. The district court, therefore, had the common-law authority to rescind Schmidt's probation if he made a misrepresentation material to the sentencing disposition.[*]

[*]I have referred to the district court's exercise of that common-law authority as rescinding probation or rescission simply to distinguish that action from a statutory revocation of probation. Both properly could be labeled "revocation" in a generic sense. But they address different forms of misconduct. Common-law rescission rectifies a defendant's fraud on the district court to obtain probation in the first instance and has nothing to do with the defendant's adherence to the actual conditions of the probation after it has been granted. By contrast, statutory revocation deals with a defendant's failure to abide by the conditions of probation after they have been imposed and is subject to the graduated sanctions and other limitations outlined in K.S.A. 2017 Supp. 22-3716.

As I have said, the county attorney did not ask the district court to exercise its common-law authority to withdraw Schmidt's probation. And the district court did not

14

invoke that authority implicitly or explicitly. The county attorney's motion afforded Schmidt the only notice he had as to the grounds on which revocation was being sought. And the motion cited only the drug test results and Schmidt's admission he used methamphetamine before the sentencing hearing. The content of the notice given Schmidt directly affected his due process rights and circumscribed the grounds on which the State could act. See *State v. Hurley*, 303 Kan. 575, 576, 363 P.3d 1095 (2016) (district court reversed for revoking probation "upon a ground for which [defendant] was not provided sufficient notice and opportunity to be heard").

Procedural due process rights guaranteed in the Fourteenth Amendment to the United States Constitution attach to probation revocation proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 & n.4, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). Due process takes no fixed form and must be shaped to fit the nature of the government action and the substantive liberty interest or property right at stake by affording procedures sufficient to protect against a wrongful deprivation commensurate with the circumstances. See *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 17-18, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978) (due process entails protection against wrongful deprivation); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"; 424 U.S. at 348-49 (due process requires procedures "be tailored" to the circumstances to "assure fair consideration"). Some proceedings, such as a criminal prosecution that may result in a significant deprivation of liberty, call for quite elaborate due process protections. A probation or parole revocation hearing requires less stringent procedures. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

A cornerstone of procedural due process is fair notice of the impending government action. *Memphis Light, Gas & Water Div.*, 436 U.S. at 14 ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit

15

adequate preparation for, an impending 'hearing.'"). Probation revocations are no exception. *Morrissey*, 408 U.S. at 489 (At a minimum, constitutional process due a parolee facing revocation includes "written notice of the claimed violations[.]"); *State v. Grossman*, 45 Kan. App. 2d 420, 423-24, 248 P.3d 776 (2011) (due process in probation revocation requires written notice of the claimed violations); *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002). Fair notice, as a component of due process, is not itself particularly flexible in the sense that a government entity might be able to satisfy its constitutional obligation with generic or vague descriptions of the bases for an intended course of action. Parties facing deprivations cannot adequately respond to indistinct notification. Parties likewise receive less than constitutional due process if they, in fact, suffer deprivations based on grounds other than those of which they have been given notice. See *State v. Hagan*, No. 106,338, 2012 WL 5392105, at *2 (Kan. App. 2012) (unpublished opinion) (Citing due process protections, this court holds the district court erred in revoking probation for a reason not contained in the warrant.); *State v. Mireles*, No. 102,997, 2011 WL 135027, at *4 (Kan. App. 2011) (unpublished opinion) ("Once a court grants probation to a defendant, it cannot turn compliance into a guessing game.").

Consistent with those constitutional requirements, the district court could not have rescinded Schmidt's probation based on his misrepresentations at the sentencing. He received no notice that he faced revocation or rescission for that reason. But, as the record demonstrates, the district court did not purport to revoke Schmidt's probation because of what happened at sentencing. Had the district court intended to do so, it should have ordered Schmidt to appear at a hearing to show cause why his probation should not be rescinded because of the material misrepresentations he offered at sentencing. See *Gary*, 282 Kan. 249 (court may rescind probation for fraudulent representations upon notice and hearing). That would have afforded Schmidt constitutionally fair notice that he faced common-law rescission of his probation. The majority cannot dispense with constitutionally required due process protections in an after-the-fact review by imputing to the district court grounds it never relied on in finding

16

Schmidt violated his probation especially when those grounds were not presented to Schmidt before the revocation hearing.

The majority's decision is doubly flawed. First, the reason it says the district court revoked Schmidt's probation wasn't the reason at all. And, second, if that were the reason, the district court would have violated Schmidt's due process rights by relying on it.

The question remains whether the ostensible probation violations the district court found were legally sufficient to support revocation. As I have already suggested, they were not.

Schmidt did not violate a condition of his probation when he complied with the probation officer's order to submit to a drug test on August 9. To the contrary, submitting to the test conformed to the conditions. Had Schmidt refused to test, that would have been a violation.

Schmidt's use of methamphetamine on August 5—four days before he was placed on probation and the conditions were imposed—is not a probation violation. Wrongful acts occurring before the district court defines and orders the conditions do not violate those conditions. As the court explained in *Gary*, the defendant committed a new crime several days before he was sentenced and placed on probation in the pending case, but the new crime didn't violate the probation because "there were simply no probation conditions in existence" at the time. 282 Kan. at 240. Schmidt's admitted drug use falls in precisely the same category as Gary's new crime. Whatever else it may be, it is not a probation violation.

The district court, therefore, erred in finding Schmidt violated the conditions of his probation and, thus, in revoking the probation under K.S.A. 2017 Supp. 22-3716. I would reverse and remand. On remand, the district court would have to give Schmidt notice that

17

it intended to rescind his probation for misrepresentations made at the sentencing hearing. So notified, Schmidt would then have a fair opportunity to marshal his arguments and any evidence to persuade the district court otherwise on that score. From here, that looks like an uphill battle. But the constitutional process due a criminal defendant generally or a probationer particularly isn't calibrated by the likelihood of success.